**In re R.H. MACY & CO., INC., et al., Debtors.**

**Anthi MANOUSOFF, Appellant,**

v.

**MACY'S NORTHEAST, INC., Appellee.**

**No. 93 Civ. 4130 (CSH).**

United States District Court, S.D. New York.

March 21, 1994.

Bonita E. Zelman, Jay R. Indyke, Kenneth A. Reynolds, Siegel, Sommers & Schwartz, New York City, for Anthi Manousoff.

Judy G.Z. Liu, Weil, Gotshal & Manges, New York City, for Macy's Northeast, Inc.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Anthi Manousoff appeals from a decision of the Bankruptcy Court of the Southern District of New York, (Burton Lifland, J.) denying her application to have a late notice of claim deemed timely pursuant to Bankruptcy Rules 9006(b).

## BACKGROUND

In October 1990, Manousoff commenced a personal injury action against R.H. Macy ("Macy's" or "Debtor") in New York state court seeking recovery for injuries sustained in a fall in Macy's Roosevelt Field store in June 1990. Manousoff was represented by Bonita Zelman, an attorney with approximately seventeen years experience in personal injury and criminal law.

On January 27, 1992, Macy's filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Manousoff's personal injury action was automatically stayed by 11 U.S.C. § 362(a). By order dated October 14, 1992, the Bankruptcy Court set December 15, 1992 as the deadline for filing all proofs of claim (the "bar date"). Notice of the bar date was mailed to Manousoff on or about October 21, 1992.

Manousoff is an elderly woman who speaks little English. Her children, both of whom are fluent in that language, periodically review her mail. Upon receiving the notice of the bar date, Manousoff's son forwarded the claim forms to Zelman with a request for an update on Manousoff's case. Zelman concedes that she received the package of forms sometime in November 1992. Rather than look at the forms to see if they were important, Zelman just tossed them into Manousoff's file without reading them. Zelman claims she first became aware of the bar date on December 21, 1992 (six days after that date) through an acquaintance who practices bankruptcy law. Zelman called Macy's counsel seeking an extension to file a timely notice of claim; Macy's counsel declined. Because of the intervening holidays, Zelman did not file a notice of claim on Manousoff's behalf until December 28, 1992, thirteen days after the bar date.

Manousoff then retained special bankruptcy counsel to make an application to have her late claim deemed timely. Manousoff essentially made two arguments. First, Manousoff claimed that it was improper for Macy's to have mailed the notice of claim to her rather than to her attorney, where Macy's was aware that appellant was represented by counsel. Second, Manousoff argued that under the standards set forth by the Supreme

Court in *Pioneer Investment Services v. Brunswick Associates, Ltd.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), her failure to file a timely notice of claim constituted excusable neglect, and under Bankruptcy Rule 9006, her application should be granted.

The application was denied by Chief Bankruptcy Judge Lifland in a decision issued from the bench on May 4, 1993, and clarified in a written decision entitled "Extract From Amended Bench Decision", *In re R.H. Macy & Co. Inc.,* 1993 WL 195408 (Bankr.S.D.N.Y. May 12, 1993). As an initial matter, Chief Judge Lifland found that it was not improper for Macy's to have mailed the notice of claim to Manousoff rather than her attorney. Chief Judge Lifland also ruled that Manousoff's counsel's failure file a timely notice of claim did not constitute excusable neglect. Manousoff appeals from that decision.

### DISCUSSION

▉ Bankruptcy Rule 9006 authorizes the Bankruptcy Court to extend certain time periods, even after their expiration, upon a showing of "excusable neglect." The Supreme Court recently considered the term "excusable neglect" in this context in *Pioneer Investment Services v. Brunswick Associates, Ltd.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In circumstances very similar to the case at bar, a creditor applied to have a notice of claim filed 20 days after the bar date deemed timely under Bankruptcy Rule 9006. The Court held that the determination of whether neglect is "excusable" is an equitable determination, which should take into account "all relevant circumstances surrounding the party's omission." *Id.,* at ——, 113 S.Ct. at 1498. The Court suggested a number of factors which should be considered in making that determination. These include: (1) the danger of prejudice to the debtor; (2) the length of the delay and the potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the movant[1]; (4) whether the movant acted in good faith; and (5) the quality of notice given to the movant about the bar date. After finding that there was no prejudice to the debtor, minimal delay to the proceedings, good faith on the part of the movant, and questionable notice of the bar date, the *Pioneer* court found that the bankruptcy court abused its discretion in denying the creditor's application.

In the case at bar, Chief Judge Lifland applied the *Pioneer* factors to the case at bar. In Manousoff's favor, he found that the length of the delay was minimal and did not adversely impact the proceedings, and he found that Manousoff was acting in good faith. In Macy's favor, he found that the quality of notice given to Manousoff was sufficient, the reason for the delay was completely within the control of Manousoff, and allowing the late notice of claim would prejudice the debtor. Balancing those factors, Chief Judge Lifland found it would be inequitable to Macy's to grant Manousoff an extension of the bar date.

Manousoff does not challenge Chief Judge Lifland's findings with respect to four of the five *Pioneer* factors.[2] She does object, however, to Chief Judge Lifland's finding that allowance of the late claim would prejudice Debtor. Chief Judge Lifland based that finding on the fact that Debtor is self-insured for the first $500,000 of every personal injury claim. He concluded that "[e]xtending the bar date to allow Mrs. Manousoff to file her proof of claim could result in a depletion of assets which would otherwise be available for distribution to other creditors. This factor therefore weighs in favor of the Debtor." Extract from Amended Bench Decision at 6.

▉ Chief Judge Lifland's analysis is, of course, mathematically correct. But I read

---

**1.** In evaluating this prong, the Court specifically found that respondents should be held accountable for the acts and omissions of their chosen counsel. Accordingly, "in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Id.,* at ——, 113 S.Ct. at 1499 (emphasis in original).

**2.** Appellant concedes that the form of the notice sent by debtor was sufficient, although she objects to the fact that it was sent to her rather than her attorney of record. See Appellant's Brief, at 21. Appellant also acknowledges that the delay in filing may have been in the reasonable control of Zelman. Id.

the *Pioneer* majority opinion as holding that prejudice to the debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. Were it otherwise, virtually all late filings would be condemned by this factor; they seek to share, with timely filed claims, in the bankrupt's limited resources.

The boundaries of a more expansive concept of prejudice to the debtor are not entirely clear. The Supreme Court furnishes no assistance in *Pioneer*. The majority refers to the unchallenged findings below concerning "the absence of any danger of prejudice to the debtor or of disruption to efficient judicial administration posed by the late filings," without reciting what the lower courts said on the points. *Id.* at ——, 113 S.Ct. at 1499. 'The pertinent lower court decisions are unreported. The Court may have been referring to the absence of prejudice factor when it observed that the bankruptcy court had taken judicial notice "of the fact that the debtor's second amended plan of reorganization, offered after this litigation was well underway, takes account of respondents' [the late filers] claims." *Id.* But *Pioneer* leaves the prejudice to the debtor factor undefined.

Some assistance, however, may be gleaned from district court cases. In *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 1002, 1007–08 (S.D.N.Y.1993), the proposed late claim amounted to $200 million, which was "about 20% of all remaining claims for which liquidations and payments remained to be processed." The liquidating plan in *Drexel* was well advanced when this late claim was asserted. In refusing to find excusable neglect, and affirming the bankruptcy court, Judge Pollack said: "The acceptance of a substantial late claim after consummation of a negotiated claims settlement and Plan of Reorganization thereon and a distribution of the major part of the assets thereunder, would disrupt the economic model on which the creditors, the Debtor and the stockholders had reached their agreements." *See also Linder v. Trump's Castle Associates,* 155 B.R. 102, 108 n. 10 (D.N.J.1993), in which the district court, remanding to the bankruptcy court for reconsideration in the light of *Pioneer* a personal injury claimant's motion to file late, observed: "In some cases a claim that is six months late will create substantial prejudice and interference, and in others it would create none."

These cases suggest that the inquiry into prejudice to the estate does not stop with dollar-for-dollar depletion. The analysis depends upon a broader consideration of the circumstances: an analysis consistent, in my judgment, with the rationale of *Pioneer*. The pertinent circumstances include the size of the late claim in relation to the estate and, closely related to the first, the disruptive effect the late filing would have upon a plan close to completion.

Accordingly I reverse the order appealed from and remand the case to the bankruptcy court for further proceedings consistent with this opinion. The bankruptcy court should reconsider the factor of prejudice to the debtor, and having done so, reexamine the question of excusable neglect, of which prejudice to the debtor is only one of several factors.

It is SO ORDERED.