**In re XO COMMUNICATIONS, INC., Debtor.**

**No. 02–12947 (AJG).**

United States Bankruptcy Court, S.D. New York.

Nov. 26, 2003.

Savage & Associates, P.C., Denise L. Savage, JennyAnn Carles, White Plains, NY, for Unsecured Claim Estate Representative for Teligent, Inc., et al.

Willkie Farr & Gallagher, Tonny K. Ho, Anthony M. Vassallo, New York, NY, for XO Communications, Inc.

**MEMORANDUM DECISION AND OR- DER (1) DENYING MOTION OF UNSECURED CLAIM ESTATE REPRESENTATIVE FOR TELI- GENT, INC., ET AL. TO PERMIT A LATE FILED PROOF OF CLAIM DUE TO INADEQUATE NOTICE AND EXCUSABLE NEGLECT AND (2) GRANTING REQUEST OF DEBTOR TO EXPUNGE THE CLAIM**

ARTHUR J. GONZALEZ, Bankruptcy Judge.

■ The issues before the Court are (1) whether Teligent, Inc. ("Teligent") received adequate notice of XO Communications, Inc.'s (the "Debtor") July 22, 2002 bar date and (2) whether circumstances surrounding Teligent's Unsecured Claim Estate Representative (the "Representative") filing of an untimely proof of claim on November 18, 2002 in the Debtor's chapter 11 bankruptcy case constitutes excusable neglect pursuant to rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule") and, thereby, the late-filed claim should be deemed as timely. The Debtor opposes the relief sought and requests that the Court expunge the claim. Upon review of the parties' pleadings,[1] the record compiled at the hearings and subsequent affidavits, the Court finds that Teligent received adequate and sufficient notice of the bar date, the Representative's failure to file a timely proof of claim was not the result of excusable neglect and the claim is therefore expunged.

## I. Jurisdiction

The Court has subject matter jurisdiction over this matter under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding within the meaning of section 157(b)(2)(A), (B) and (O) of title 28 of the United States Code.

## II. Background

### A. *Debtor's Bankruptcy Case*

On June 17, 2002 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On the same day, the Debtor filed a plan of reorganization and related disclosure statement, whereby the disclosure statement provided, *inter alia,* that the estimated recovery for "Class 5" claims consisting of general unsecured claims is 8.5% if a certain investment agreement is consummated or 0.4% if certain stand-alone events occur under the plan. However, prior to setting the applicable bar date, such 8.5% estimated Class 5 claims recovery was revised to 8.6% under the disclosure statement for the Debtor's second amended plan of reorganization filed on July 17, 2002.

The Court ordered on June 18, 2002 that (1) "that the Debtor is permitted to file with its chapter 11 petition a creditor list (omitting claim amounts) in electronic form," and (2) "that the Debtor (and/or its authorized agent) is authorized to mail general notices required to be transmitted in this chapter 11 case ... to those entities

---

1. The Court did not take into consideration the Debtor's post-hearing letter filed on April 1, 2003 or the Representative's response letter filed on April 2, 2003 because the Court authorized neither filing.

entitled to receive such notices."[2] Subsequently, the Debtor submitted to its Court-approved claims agent, that is, Bankruptcy Services LLC ("BSI"), a list of creditors without claim amounts, entitled "Full Creditor/Accounts Payable List" (the "List of Creditors"). Shortly after the Petition Date, yet prior to filing of the Debtor's schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "Statement of Financial Affairs"), the Debtor submitted its List of Creditors to BSI, which included Teligent.

On June 19, 2002, the Court entered an order (the "Bar Date Order") (1) setting July 22, 2002 as the bar date (the "Bar Date") for filing proofs of claim against the Debtor and its estate, (2) requiring that notice of the Bar Date for filing proofs of claim (the "Bar Date Notice") be served by first-class mail to "all known creditors" on or before June 22, 2002 and (3) ordering that the Bar Date Notice be published on or before July 3, 2002 in the national edition of *The Wall Street Journal*. In accordance with the Bar Date Order, the Debtor arranged for BSI to serve by mail to parties in interest, *inter alia*, the Bar Date Notice and notice of commencement of the case (the "Notice of Commencement").

Although the Debtor asserts in its pleadings that its last contact with Teligent was during December 2001, Debtor's State-ment of Financial Affairs notes that the Debtor made a $22,800 payment to Teligent on March 13, 2002. Since the Debtor and Teligent had a business relationship up until at least March 2002, it appears that the Debtor out an abundance of caution included Teligent in its List of Creditors because Teligent was a vendor when the Debtor filed its voluntary petition. However, after the Debtor reviewed its books and records and did not find any debts outstanding to Teligent on or after the Petition Date, the Debtor did not list Teligent in its Schedules. The Debtor filed its Schedules and Statement of Financial Affairs on June 24, 2002 pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007.

Subsequently, the Debtor filed its third amended plan of reorganization (the "Plan") on July 23, 2002. The disclosure statement to the Debtor's Plan filed on July 24, 2002 revised the estimated recovery for Class 5 claims to: (1) 8.6% Class 5 claims recovery if a certain investment agreement is followed; or, in the alternative, (2)(a) 1.4% Class 5 claims recovery if two-thirds or more of the unaffiliated senior note claims vote to approve the stand-alone plan, or (b) 0.2% Class 5 claims recovery if less than two thirds of the unaffiliated senior note claims vote to approve the stand-alone plan but the official committee of unsecured creditors votes in

---

**2.** The June 18, 2002 order (the "Order") regarding the Debtor's list of creditors was based on a June 17, 2002 Motion by the Debtor for an Order Authorizing the Debtor to Mail Initial Notices and to File a List of Creditors (Without Claim Amounts) in Lieu of Matrix. The motion specifically asserted that Bankruptcy "Rule 1007 ... and General Order No. 8 require that all voluntary petitions be accompanied by a label matrix containing the names and mailing addresses of all parties in interest, so far as is known (including claim amounts), and those of the debtor and debtor's counsel." Although the Court referred to a standing order entitled "General Order No. 8" in its Order (which was drafted by Debtor's bankruptcy counsel), the standing orders of the Court do not have a "General Order No. 8" regarding list of creditors. Subsequently, Debtor's bankruptcy counsel clarified that it inadvertently referenced another bankruptcy court's standing order in its motion and draft of the Order. The Court notes that neither its standing orders nor the Court's Local Bankruptcy Rules procedurally require that "claim amounts" be included in the Debtor's list of creditors. Accordingly, it was unnecessary for the Order to permit the Debtor to submit a list of creditors without "claim amounts."

favor of confirming such a plan. The Court confirmed the stand-alone plan of the Debtor on November 15, 2002 (the "Confirmation Date"), which became effective on January 16, 2003.

## B. *Teligent's Bankruptcy Case*

On May 21, 2001, Teligent filed a voluntary petition in this district requesting relief under chapter 11 of the Bankruptcy Code (that is, Case No. 01–12974 before the Honorable Stuart M. Bernstein, Chief United States Bankruptcy Judge for the Southern District of New York). Schedule 3 of Teligent's voluntary petition lists several premises that it "owned, leased or held under other arrangement," including "12001 Sunrise Valley Dr, Reston, VA."

On September 6, 2002, Teligent's third amended joint plan of reorganization was confirmed. Pursuant to this confirmed plan, Bloom, Borenstein & Savage, P.C. ("BBS") was appointed as the Representative as set forth in an agreement dated September 12, 2002.

## C. *Notice To Teligent*

On June 21, 2002, BSI mailed the Debtor's Notice of Commencement, Bar Date Notice and its related chapter 11 case materials by first-class mail to Teligent at "12001 Sunrise Valley Drive, Reston, VA 20191," which is the address listed for Teligent as a "creditor" in the Debtor's List of Creditors. The Teligent mailing, however, was returned to BSI as undeliverable. BSI forwarded the returned Teligent mailing to the Debtor. The Debtor apparently took no further action regarding the notice to Teligent. Subsequently, in accordance with the Bar Date Order, the Debtor arranged for publication of the Bar Date Notice in the national edition of *The Wall Street Journal* on July 3, 2002.

Although Teligent occupied the 12001 Sunrise Valley Drive, Reston, Virginia premises as of the date of its own chapter 11 filing, Teligent subsequently sought and received a court order dated July 2, 2001 approving the rejection of that lease. Teligent did not inform the Debtor of this change of address.

## D. *Teligent's Preference Claim*

The Representative asserts, and the Debtor does not dispute, that Teligent and the Debtor maintained a long-standing business relationship prior to the Debtor's bankruptcy filing, whereby the parties exchanged an assortment of telecommunication services and remitted payments to one another utilizing various methods and schedules. The Representative maintains that in the course of the Debtor and Teligent's ongoing business, Teligent made preferential payments to the Debtor within the ninety-day period before Teligent filed for bankruptcy protection on May 21, 2001.

Teligent's Disclosure Statement filed on July 11, 2002, provides, in pertinent part, that:

> With respect to General Unsecured Claims, the Debtors are unable to determine the actual recovery that Holders of such Claims will receive under the Plan until a complete investigation of the Chapter 5 Causes of Action is completed. The Debtors have conducted some very preliminary analysis of the Chapter 5 Causes of Action and currently believe that there may be certain actions that can be brought, but the value of such actions cannot be determined at this time. Under the Plan, the Debtors will transfer $300,000 to the Unsecured Claims Estate Representative to investigate and pursue the Chapter 5 Causes of Action. Such party would be authorized to conduct a complete analysis of the Chapter 5 Causes of Actions [sic] and commence litigation to recover funds from third parties.

Teligent's Second Amended Disclosure Statement (Art. III, § C). In turn, Teligent's plan of reorganization defines "Chapter Causes of Action" and "Unsecured Claim Estate Representative" as follows:

*Chapter 5 Causes of Action:* Any and all of any Debtor's rights, claims, or causes of action under section 542, 544, 545, 547, 548, 549, 550 and 552(b) of the Bankruptcy Code, whether known or unknown, in law, equity, or otherwise, except to the extent waived or retained by the Debtors during the Chapter 11 Cases or pursuant to the Plan.

. . . .

*Unsecured Claim Estate Representative:* That Person appointed by the Creditors Committee to be the estate representative pursuant to section 1123(b)(3) of the Bankruptcy Code to pursue the Chapter 5 Causes of Action and determine the validity, priority and amount of the General Unsecured Claims; provided, however, that if the Creditors' Committee does not designate such Person by the Confirmation Date, the Debtors shall designate the Unsecured Claim Estate Representative.

Teligent's Disclosure Statement, therefore, indicates that, after a preliminary investigation, Teligent was aware it had several causes of action, which included section 547 avoidance actions, however, it opted to have the Representative complete the investigation and pursue such actions. After Teligent's plan was confirmed, the Representative alleges that it reviewed Teligent's records and determined that the payments to the Debtor were preferential payments pursuant to section 547 of the Bankruptcy Code and thereby a preference claim existed against the Debtor in the amount of $1,399,077.22 (the "Preference Claim"). The Court notes that prior to the filing of Teligent's Disclosure State-

ment on July 11, 2002, the Debtor's disclosure statement to its first amended plan of reorganization filed on June 26, 2002 reflects that the estimated recovery for the Preference Claim under the Plan was approximately 8.5% (that is, approximately a $118,921.56) if a certain investment agreement was consummated or 0.4% (that is, approximately a $5,596.31) if the standalone plan was followed. Ultimately, the general unsecured creditors under the Debtor's Plan as confirmed were estimated to receive approximately between 1% to 2%; in other words, the estimated recovery for the Preference Claim of $1,399,077.22 would be between $13,990.77 and $27,981.54.

On November 18, 2002, nearly four months after the expiration of the Debtor's Bar Date, and after entry of the November 15, 2002 confirmation order in the Debtor's bankruptcy case, but prior to the effective date of the Plan, the Representative, that is, BBS, filed a proof of claim on behalf of Teligent's estate (the "Proof of Claim") for the Preference Claim.

On or around November 26, 2002, BBS commenced dissolution proceedings and Teligent substituted Savage & Associates, P.C. as the Representative on December 4, 2002. At both BBS and Savage & Associates, P.C., the same attorney handled the representation of the Representative. On December 26, 2002, the Representative filed a Notice of Substitution of Counsel and Appearance in the Debtor's bankruptcy proceeding.

On February 4, 2003, the Representative filed a motion (the "Motion") for the late-filed Proof of Claim to be deemed as timely (1) based on inadequate notice of the Debtor's bankruptcy filing, Bar Date and Confirmation Date, and (2) based upon excusable neglect pursuant to Bankruptcy Rule 9006(b)(1).

In response, on February 25, 2003, the Debtor filed an objection to the Motion (the "Objection"), asserting that Teligent had adequate notice of the Debtor's bankruptcy proceedings and that the Representative failed to meets its burden of establishing excusable neglect.

### E. Hearings And Supplemental Affidavits

An initial hearing on the Motion and Objection was held on March 19, 2003. The Court held an additional hearing on September 3, 2003, and issued a partial ruling, directing that by October 3, 2003:(1) counsel for Teligent submit a supplemental affidavit setting forth what information or facts were known by Teligent's officers and bankruptcy counsel with respect to the pendency of the Debtor's bankruptcy case; (2) the Representative clarify how the Motion appears to state that neither Teligent nor the Representative had knowledge of the Debtor's bankruptcy case prior to the Debtor's Confirmation Date (that is, November 15, 2002), yet the Representative sent an October 14, 2002 e-mail to a special counsel in the Global Crossing bankruptcy case in this district (that is, Case No. 02–40188 before the Honorable Robert E. Gerber, United States Bankruptcy Judge for the Southern District of New York), which sets forth an awareness of the Debtor's bankruptcy case on the date of such e-mail [3]; and (3) Debtor's counsel set forth whether initial distributions have been made under the confirmed Plan.

As directed by the Court, the Representative filed a supplemental affidavit on September 19, 2003. The Representative states that after it became aware on or about October 14, 2002 that Teligent might have made one or more preferential transfers to the Debtor, the Representative sent an e-mail on such date to counsel for JP Morgan Chase, the then Chairperson of the Stockholders' Committee of the reorganized Teligent, seeking clarification as to whether the Representative had a right to file proofs of claim on behalf of Teligent since Teligent's plan of reorganization was silent as to such right and whether Teligent was the recipient of any bar date notices. The Representative notes that JP Morgan Chase's counsel sent a response e-mail on October 15, 2002 stating that he believed that the Representative had a right to file such proofs of claim. During this time, the Representative asserts that it inquired with Teligent's in-house counsel whether Teligent had any notice of the bar dates in the Debtor's or Global Crossing's bankruptcy cases and whether Teligent had filed a proof of claim in either case (however, the Court notes that contrary to this representation regarding this inquiry during October 2002, as discussed later, Teligent's in-house counsel filed an affidavit indicating that Teligent's first awareness of the Bar Date was in September 2003). The Representative states that Teligent informed it, *inter alia*, that the company neither received the Debtor's Bar Date Notice nor had it filed a proof of claim in the Debtor's bankruptcy case. Also, the Representative states that it did

---

3. The Representative's e-mail is part of Exhibit D to the Representative's post-hearing supplemental reply brief to the debtors' objection to the Representative's motion to enlarge the time to file a proof of claim in the Global Crossing bankruptcy case. The e-mail specifically provided as follows:

There were several transfers by Teligent to now bankruptcy entities (XO Communica-

tions, Global Crossing, World[C]om, etc.). Have proofs of claim associated with the preference claims been filed in these respective cases? Do you want my firm to undertake such a filing if the bar dates have not yet passed or will Kirkland & Ellis take care of it?

not have actual or constructive knowledge of the Debtor's bankruptcy case since from October 15, 2001 up to the appointment of the Representative on September 12, 2002, the Representative did not appear in any cases in this district; rather, the Representative's practice was exclusively related to bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware.

In addition, the Representative notes in its affidavit that after it was retained on September 12, 2002, it sought documents and data from Teligent and Bankruptcy Management Corporation related to Teligent's preferential transfers. However, the Representative notes that on November 5, 2002 Teligent only provided a spreadsheet reflecting preferential transfers and such data was incomplete because it did not include transfers made by Teligent's former domestic subsidiaries and certain wire transfers. The Representative asserts that after verifying Teligent's transfers, the Representative immediately thereafter mailed the Proof of Claim on November 12, 2002, which was docketed by the Court as filed on November 18, 2002.

The Representative also notes that it does not represent Teligent and it has commenced adversary proceedings against Teligent. Moreover, the Representative maintains in its affidavit that although it informed Teligent's in-house counsel as well as its bankruptcy counsel of the Court's September 3, 2003 directive that Teligent file an affidavit disclosing its counsel and officers' knowledge of the Debtor's bankruptcy case, Teligent's bankruptcy counsel responded that he was not sure whether he would file such affidavit. The Representative claims that it subsequently reminded Teligent's bankruptcy counsel of a certain cooperation agreement set forth in Teligent's confirmed plan of reorganization which may compel Teligent to cooperate with the Representative and, thereby, again requested for Teligent to file an affidavit consistent with the Court's September 3, 2003 directive.

On October 3, 2003, an officer of the reorganized Debtor filed an affidavit confirming that Debtor made initial distributions to certain classes of claims under the Plan in January 2003.

Also, on October 16, 2003, after obtaining permission from the Court to file an affidavit late, in-house counsel for the reorganized Teligent filed an affidavit stating that during the pendency of the Debtor's bankruptcy case Teligent was focused on its own plan confirmation and reorganization efforts and thereby had no knowledge prior to September 3, 2003 of the Debtor's July 22, 2002 Bar Date. This supplemental affidavit, however, did not provide, as requested by the Court during the September 3, 2003 hearing, any information or facts that were known by Teligent's officers, including the affiant, and bankruptcy counsel with respect to the pendency of the Debtor's bankruptcy case. The affidavit merely states that neither Teligent's officers nor in-house counsel "(i) had any knowledge prior to September 3, 2003 that this Court had established the Bar Date, or (ii) are aware of receiving any notices pertaining to the Bar Date."

## III. Discussion

### A. *Adequacy Of Notice*

#### 1. *Parties' Contentions*

The Representative asserts that the Debtor is statutorily required to list all "known" creditors in its "schedule of creditors" and provide notice of any bar date to all creditors. Also, the Representative notes that, irrespective of the long-standing business relationship between Teligent and the Debtor, neither Teligent nor its subsidiaries as "known" creditors (1) re-

ceived the requisite actual notice of the Debtor's bankruptcy filing, (2) were listed in the Debtor's "schedule of creditors,"[4] (3) were served with the Bar Date Notice, or (4) were notified of the Plan's Confirmation Date. The Representative specifically argues that since neither Teligent nor itself had actual knowledge of the Debtor's Bar Date, the Proof of Claim cannot be discharged or enjoined for it would violate Teligent's rights under the Due Process Clause of the Fifth Amendment. The Representative contends, therefore, that the late-filed Proof of Claim should be deemed as timely.

The Debtor counters that, contrary to the Representative's assertion that Teligent was a "known" creditor of the Debtor, Teligent was, at best, an "unknown" creditor only entitled to publication notice because, at the time it filed its Schedules, (1) the Debtor's books and records did not indicate any debts outstanding to Teligent, and (2) that irrespective of how hard the Debtor would have searched its books and records, it would not have identified Teligent as a creditor who would assert the Preference Claim against it because the claim is merely conceivable, conjectural or speculative on whether Teligent would assert such a claim. The Debtor clarifies that a preference claim is a type of liability that is created by the Bankruptcy Code and not the type an entity typically tracks on its books and records.

In addition, the Debtor notes that out of an abundance of caution and attempt to cast as wide a net as possible for gathering claims, it mailed the Bar Date Notice to Teligent's last known address. Although the mailing was returned, the Debtor asserts that Teligent could have ensured that it would receive communications from the Debtor by advising the Debtor of its new address after closing its Reston, Virginia location.

## 2. *Notice Standards*

 A fundamental purpose of bankruptcy law is to secure within a limited period a prompt and effectual administration and settlement of the debtor's estate. *In re Best Products Co.*, 140 B.R. 353, 356 (Bankr.S.D.N.Y.1992) (citing *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). In furtherance of this purpose, Bankruptcy Rule 3003(c) mandates that a claimant file a timely proof of claim against a debtor's estate in chapter 11 bankruptcy in order to participate in the debtor's reorganization. In particular, Bankruptcy Rule 3003(c)(3) provides that a proof of claim must be filed by the claimant prior to a bar date established by order of a bankruptcy court. Such a "bar [date] order in a chapter 11 case serves the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id.* at 357. After the bar date expires, "the claimant cannot participate in the reorganization unless [the claimant] establishes sufficient grounds for the failure to file a proof of claim." *Id.* Also, upon confirmation of a debtor's reorganization plan, a debtor is discharged from any debt that arose before the date of such confirmation. *See* 11 U.S.C. § 1141(d).

 Before a debtor can obtain a discharge of a claim in bankruptcy, however, the Due Process Clause of the Fifth

---

4. The Representative's Motion states that Teligent was not listed on the Debtor's "schedule of creditors," which the Court interprets as the Debtor's Schedules of Assets and Liabilities and not the Debtor's List of Creditors that did in fact list Teligent as a creditor.

Amendment dictates that a debtor's creditors receive notice of the debtor's bankruptcy case and applicable bar date so that creditors have an opportunity to make any claims they may have against the debtor's estate. *See generally In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 679 (Bankr.S.D.N.Y.1993) (noting that "[t]he Fifth … Amendment[ ] protect[s] against deprivation of 'life, liberty or property, without due process of law.' A … claim against the [bankruptcy] estate[ ] constitutes property within the meaning of the Amendment[ ] and cannot be forfeited through proceedings lacking in due process."). The Supreme Court has made clear in *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that not just any notice will suffice. In particular, the Supreme Court found in *Mullane* that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652; *see generally Chemetron Corp. v. Jones*, 72 F.3d 341, 346 n. 1 (3d Cir.1995) (noting that "[a]lthough *Mullane* involved the notice due [to] beneficiaries on judicial settlement of accounts by the trustee of a common trust fund, subsequent courts have interpreted the case to set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases.") (citing, in part, *In re R.H. Macy & Co.*, 161 B.R. 355, 359 (Bankr.S.D.N.Y.1993)) (italics added). Further, if a debtor who files for chapter 11 bankruptcy protection does not give "reasonable notice" to a creditor of the bankruptcy proceeding and the applicable bar date(s), the creditor's proof of claim cannot be constitutionally discharged. *In re U.S.H. Corp. of N.Y.*, 223 B.R. 654, 658 (Bankr.S.D.N.Y.1998).

▮ What type of notice is reasonable or adequate, however, depends on whether the creditor is "known" or "unknown" to the debtor. *See id.* If a creditor is "known" to a debtor, actual notice of a debtor's bankruptcy filing and bar date must be given to the creditor in order to achieve a legally effective discharge of the creditor's claim.[5] *See Chemetron*, 72 F.3d at 346 (citing *City of New York v. N.Y., New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953)). If the creditor is "unknown" to the debtor, however, constructive notice is generally sufficient. *Id.* Constructive notice can be satisfied through publication notice since

---

**5.** While a creditor that has notice or actual knowledge of an individual debtor's chapter 7 petition has a burden to inquire about the bar date since it is set statutorily, the Second Circuit has noted in *In re Medaglia*, 52 F.3d 451 (2d Cir.1995) that "knowledge of a corporate reorganization petition does not necessarily enable a creditor to estimate the bar date." *Id.* at 457. The bankruptcy court in *In re Brunswick Hospital Center, Inc.*, 1997 WL 836684, 1997 Bankr.LEXIS 2184 (Bankr. E.D.N.Y. Sept. 12, 1997), further clarified as follows:

> We treat creditors with actual knowledge differently in Chapter 11 because of procedural differences with Chapter 7. Unlike in a Chapter 7 case, the Chapter 11 bar date is not set by the Federal Rules of Bankruptcy Procedure. Thus, notice of the bankruptcy does not afford the creditor the information necessary to determine the applicable bar claims date. The Chapter 11 creditor with actual notice would need to constantly search for the latest court orders, which could be entered at any time. For that reason, the burden is on the Chapter 11 debtor to cause formal notice to be given to creditors. A creditor who is not given notice, even if it has actual knowledge of the reorganization, does not have a duty to investigate or inject itself into the proceedings.

*Id.* at *17.

"in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652; *see Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1982) ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice.").

### 3. *"Known" Versus "Unknown" Creditor*

■ Several basic principles underlie the determination of whether a creditor is "known" or "unknown" to the debtor. *Drexel,* 151 B.R. at 680. The Supreme Court has explained that a "known" creditor includes both a claimant whose identity is actually known to the debtor or a claimant whose identity is "reasonably ascertainable" by the debtor. *See Chemetron,* 72 F.3d at 346 (emphasizing that claimants must be reasonably ascertainable, not reasonably foreseeable). An "unknown" creditor is a claimant whose identity or claim is not "reasonably ascertainable" or is merely "conceivable, conjectural or speculative." *In re Thomson McKinnon Sec., Inc.,* 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991); *see Mullane,* 339 U.S. at 317, 70 S.Ct. 652 (noting that it was reasonable to dispense with more certain notice to claimants "whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to [the] knowledge [of the debtor].") ; *see also Tulsa,* 485 U.S. at 490, 108 S.Ct. 1340 ("Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice. . . . It is reasonable to dispense with actual notice to those with mere 'conjectural' claims.").

■ A creditor is "reasonably ascertainable" if the debtor can uncover the identity of that creditor through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane,* 339 U.S. at 317, 70 S.Ct. 652. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *In re Brooks Fashion Stores, Inc.,* 124 B.R. 436, 445 (Bankr.S.D.N.Y.1991) (quoting *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.),* 125 B.R. 650, 654 (M.D.Fla.1991)). "[W]hat is required is not a vast, open-ended investigation." *Chemetron,* 72 F.3d at 347. Instead, *"[t]he requisite search . . . focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required.* Only those claimants who are identifiable through a diligent search are 'reasonably ascertainable' and hence 'known' creditors." *Id.* (emphasis added). The bankruptcy court in *In re Drexel Burnham Lambert Group Inc.,* 151 B.R. 674, 681 (Bankr.S.D.N.Y.1993), further explained as follows:

> Reasonable diligence in ferreting out known creditors will, of course, vary in different contexts and may depend on the nature of the property interest held by the debtor. Applying *Mullane's* "reasonable under the circumstances" standard, due process requires a reasonable search for contingent or unmatured claims so that ascertainable creditors can receive adequate notice of the bar date. What is reasonable depends on the particular facts of each case. A debtor need not be omnipotent or clairvoyant. A debtor is obligated, however, to undertake more than a cursory re-

view of its records and files to ascertain its known creditors.

Known creditors are defined as creditors that a debtor knew of, or should have known of, when serving notice of the bar date. Among known creditors may be parties who have made a demand for payment against a debtor in one form or another before the compilation of a debtor's schedules. Typically, a known creditor may have engaged in some communication with a debtor concerning the existence of the creditor's claim. This communication by itself does not necessarily make the creditor known. Direct knowledge based on a demand for payment is not, however, required for a claim to be considered "known." A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it.

*Id.* (citations and footnote omitted). *See generally In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir.1998) (holding that "in order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable.").

### 4. *Whether Teligent's Preference Claim Was Reasonably Ascertainable By Debtor*

█ In the instant case, the Representative does not argue in its Motion that Teligent was a "known" creditor because it was listed on the Debtor's List of Creditors.[6] Rather, the crux of the Representative's inadequate notice argument is that since Teligent and Debtor had a long-standing business relationship of exchanging telecommunication services and remitting payments to one another (which included Teligent's alleged preferential payments to the Debtor), Teligent was a "known" creditor to the Debtor and, thus, Teligent should have been listed in the Debtor's Schedules and been sent actual notice of the Debtor's bankruptcy filing and Bar Date.

The Court, therefore, concludes that the determining factor as to whether the Debtor's publication notice in *The Wall Street Journal* was adequate and sufficient for Teligent depends on whether Teligent was a "known" or "unknown" creditor when the Debtor filed its Schedules. If Teligent was a "known" creditor at the time, it was entitled to actual notice of the Debtor's bankruptcy filing and the Bar Date and, therefore, the Court would deem the late-filed Proof of Claim as timely. *See Drexel*, 151 B.R. at 680. If Teligent was "unknown" to the Debtor, Teligent must show that its failure to file a timely Proof of Claim was due to excusable neglect. *See id.*

█ Here, while past business dealings between the Debtor and Teligent might explain the Debtor exercising caution in initially including Teligent on the List of Creditors, the prior relationship does not by itself make Teligent a "known" creditor or Teligent's Preference Claim "reasonably ascertainable" by the Debtor to establish Teligent was a "known" creditor. As the Debtor correctly indicates, a preference claim is the type of liability that

---

**6.** The Court notes, as previously discussed, Teligent was not listed on the Schedules since the Debtor's books and records did not reflect any amount due to Teligent on the date the Debtor filed its Schedules. The Debtor nevertheless did send the Bar Date Notice to Teligent because it was a vendor of the Debtor, yet such notice was returned to the Debtor because Teligent had changed its address and did not provide the new address to the Debtor.

is created by the Bankruptcy Code and not the type an entity "generally" tracks on its books and records. Such a claim is merely "conceivable, conjectural or speculative," that is, the claim is "dependent"[7] on whether a claimant will "opt" to pursue the claim.

The Debtor was under no affirmative duty when it filed its Schedules to inquire if the payment it received from Teligent would be treated as a preferential payment and urge Teligent to avoid such a payment. Rather, it was Teligent's choice to pursue the Preference Claim. Even if the Debtor knew that Teligent filed for bankruptcy protection and that a preference cause of action may arise against several entities that may have received payments from Teligent within the ninety-day period, the Debtor was not required to give actual notice of the Debtor's bankruptcy filing and Bar Date since Teligent merely had a "conceivable, conjectural or speculative" claim. *See id.* at 445 (citing *In re Charter Co.,* 125 B.R. at 656) (applying a similar rationale). Also, prior to the date the Schedules were filed, the record does not show (1) that there were any outstanding, ordinary business debts due to Teligent on the Debtor's books and records, (2) that Teligent communicated to the Debtor that it would seek to avoid the preferential payment, or (3) that facts existed that would have alerted the Debtor

that the Preference Claim might possibly be asserted against it.

Under all of these factors, the Court finds that Teligent was an "unknown" creditor at the time the Debtor filed its Schedules and, therefore, Teligent's due process rights were satisfied with publication notice in *The Wall Street Journal. See In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 112 B.R. 920 (N.D.Ill. 1990) (holding that publication notice in *The Wall Street Journal* regarding applicable bar dates was adequate under bankruptcy law and sufficient under the Due Process Clause for unknown creditors). Accordingly, the Representative's only recourse is to show that its failure to timely file the Proof of Claim was due to excusable neglect.

### B. *Excusable Neglect*

Bankruptcy Rule 9006(b)(1) provides that a bankruptcy court in its discretion may deem a late-filed proof of claim as timely where a claimant establishes "excusable neglect." The burden is on the claimant to prove that he or she did not timely file the proof of claim because of excusable neglect. *In re Andover Togs, Inc.,* 231 B.R. 521, 549 (Bankr.S.D.N.Y. 1999).

The seminal case interpreting the "excusable neglect" language of Bankrupt-

---

**7.** The Court notes that the claim is not a known "contingent" claim of the Debtor that would give rise to actual notice to Teligent. There is nothing in the record indicating that the Debtor reasonably contemplated at the time it contracted with Teligent that Teligent would subsequently file for bankruptcy protection and seek to reverse its payment for the Debtor's services. *See In re Pennypacker,* 115 B.R. 504, 507 (Bankr.E.D.Pa.1990) (citations omitted) (noting that a "contingent claim" is defined as "[t]he debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to

the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred."); *see Jensen v. Bank of America N.T. & S.A.,* 114 B.R. 700, 705 (Bankr.E.D.Cal. 1990) (holding same); *see also In re Drexel Burnham Lambert Group Inc.,* 151 B.R. 674, 682 (Bankr.S.D.N.Y.1993) (noting "that an unconditional guaranty, by its very nature, notifies the guarantor that a debt may be owing at some later date" and that the "beneficiary of an unconditional guaranty rendered it a known creditor entitled to actual notice of the bar date.").

cy Rule 9006(b)(1) is *Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In permitting a creditor's late filing under Bankruptcy Rule 9006(b)(1), the Supreme Court explained that Congress, "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' plainly contemplated that courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388, 113 S.Ct. 1489 (quoting, in part, Bankruptcy Rule 9006(b)(1)). The Supreme Court further clarified that whether a claimant's neglect of a deadline is excusable is an equitable determination, taking account of all the relevant circumstances surrounding the claimant's omission. *See id.* at 395, 113 S.Ct. 1489. These equitable considerations include (1) "the danger of prejudice to the debtor," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Id.*

The relative weight, however, to be accorded to the factors identified in *Pioneer* requires recognizing that not all factors need to favor the moving party. *See In re Keene Corp.,* 188 B.R. 903, 909 (Bankr. S.D.N.Y.1995). As one bankruptcy court concluded, "[n]o single circumstance controls, nor is a court to simply proceed down a checklist ticking off traits. Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other" *In re 50–Off Stores, Inc.,* 220 B.R. 897, 901 (Bankr. W.D.Tex.1998).

With *Pioneer's* four equitable factors in mind, the Court turns to the facts of this case to determine if the Representative's failure to file a timely Proof of Claim on behalf of Teligent's estate was caused by excusable neglect.

### 1. *Danger Of Prejudice To Debtor*

The Representative asserts that the Debtor will not be prejudiced by deeming the late-filed Proof of Claim as timely. In support of its lack of prejudice assertion, the Representative notes, *inter alia,* that the size of the Proof of Claim is *de minimis* in relation to the rest of the Debtor's estate, that the claim cannot possibly be disruptive to the Plan's confirmation since it was filed after the Confirmation Date, and allowing the late-filed claim at this juncture will not be disruptive to the Plan's completion.

While the Debtor admits that the Proof of Claim's amount would not have a substantial impact on the distributions to other claims, the Debtor maintains that even an insubstantial claim that dilutes the distribution pool effects the remaining distributions to creditors.

The bankruptcy court in *In re Keene Corp.,* 188 B.R. 903 (Bankr.S.D.N.Y.1995), noted that while *Pioneer* did not define "prejudice," the term goes beyond concern with harm to the debtor and also considers "the adverse impact that a late claim may have on the judicial administration of the case." *Keene,* 188 B.R. at 910. The *Keene* court clarified that, subsequent cases have weighed a number of considerations, including (1) "the size of the late claim in relation to the estate," (2) "whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Id.; see Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy*

*& Co., Inc.)*, 166 B.R. 799, 802 (S.D.N.Y. 1994) ("Prejudice to the debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims.... The analysis depends on a broader consideration of circumstances ... [including] the size of the late claim in relation to the estate and, closely related to the first, the disruptive effect the late filing would have upon a plan close to completion."); *In re Alexander's Inc.*, 176 B.R. 715, 722 (Bankr. S.D.N.Y.1995) (noting that although expectation of claim by a debtor is one factor to consider if a debtor is prejudiced, other factors must be considered in determining prejudice, including whether the claim was filed after confirmation of a debtor's plan of reorganization).

While the Proof of Claim was filed after the Plan had been negotiated and confirmed without the Debtor and other creditors' knowledge of such claim, the Court finds that prejudice to the Debtor is lacking under this factor in light of the fact that, as the Debtor acknowledges, the claim is not substantial in relation to the rest of the claims filed against the Debtor's estate. Further, it does not appear that the amount at issue here would have any disruptive impact with respect to the economic considerations and reliance factors related to the plan process, if the late-filed Proof of Claim were deemed timely. Therefore, the danger of prejudice factor weighs in favor of the Representative.

### 2. *Length Of Delay And Its Potential Impact On Judicial Proceedings*

The Representative explains that it mailed the Proof of Claim a week after it received a spreadsheet from Teligent regarding the company's preferential payments, where the Representative requested such spreadsheet two months earlier from Teligent. The Representative also asserts that the three-day delay between the Confirmation Date and the actual filing of the Proof of Claim would have little or no impact on the efficient judicial administration of the case. Specifically, the Representative asserts that the claim was received early enough to allow ample opportunity to make necessary changes in the case, if any, without prejudicing the interest of other creditors or inhibiting the Court's ability to administer the Debtor's reorganization.

The Debtor asserts that permitting the late-filed Proof of Claim would adversely affect the prompt administration of its case. The Debtor notes that at the time of its Objection, the Debtor's claim register had 185 late proofs of pre-petition claims in excess of $36.4 million. The Debtor argues that if the Court accepts the late-filed Proof of Claim, this would potentially open the floodgates to other late-claim motions from unknown and known parties alleging for the first time unknown obligations allegedly owed by the Debtor. Thus, the Debtor maintains it will be forced to expend substantial funds in litigating other late-claim motions, thereby delaying final distributions under the Debtor's Plan.

The Court is concerned that deeming the late-filed Proof of Claim as timely at this stage of the case would unnecessarily delay administration of the Debtor's case. Moreover, irrespective of the fact that it filed only three days after the Confirmation Date, the Court notes that the Proof of Claim was still filed approximately four months after publication of the Bar Date Notice.

Further, the Court emphasizes that the Bar Date Order was meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor

to make swift distributions under the Plan. To find otherwise, that is, outside of the context of excusable neglect, would vitiate the very purpose of the Bar Date Order and would clearly impact the Debtor's reorganization process. The Court, therefore, finds that the length of delay factor weighs in favor of the Debtor.

### 3. *Reason For Delay, Including Whether It Was Within Reasonable Control Of Movant*

The Representative contends that the reason for the delay in filing the Proof of Claim was not due to actual negligence, but rather was caused by circumstances beyond Teligent's control. In particular, the Representative argues that since Teligent was not provided with actual notice of the Bar Date, it was beyond Teligent's control to file a timely Proof of Claim. Furthermore, the Representative maintains, *inter alia,* that while it was retained on September 12, 2002, it did not receive a spreadsheet from Teligent concerning the company's preferential payments until November 5, 2002 and, even then, it had to verify the spreadsheet transfers in an effort to file an accurate Proof of Claim.

In response, the Debtor argues that Teligent and its bankruptcy counsel are ultimately at fault in not informing the Debtor of the change of address. The Debtor also notes that since (1) Teligent and the Debtor are both in the telecommunications industry, which has been in distress for a significant period of time on or before Teligent's and the Debtor's respective voluntary chapter 11 bankruptcy petitions, (2) the Debtor's bankruptcy was approximately the ninth largest chapter 11 filing (according to magnitude of assets) during the 2002 calendar year, (3) the Debtor's bankruptcy filing received extensive media coverage, (4) Teligent was represented by sophisticated bankruptcy counsel with a nationwide presence that would likely have been aware of the Debtor's bankruptcy case, and (5) Teligent and the Debtor's chapter 11 cases were both pending in the same courthouse at the same time, it is highly surprising that Teligent and its bankruptcy counsel could be so ignorant of the Debtor's chapter 11 case and related Bar Date.

Since Teligent was an "unknown" creditor and the Debtor provided "publication" notice to such creditors, the Court first finds that the Representative's argument that "actual" notice is required in this case is without merit.

Further, the Court also finds that although the reason for the delay in filing a timely Proof of Claim was not caused by the Representative since it was not appointed until after the Bar Date of July 22, 2002, that is, it was appointed on September 12, 2002, the Representative is effectively the successor in interest to Teligent's rights to pursue avoidance actions and there is no reason to distinguish the actions of the Representative from those of Teligent. The fact that Teligent made an informed decision to pursue avoidance actions after confirmation by way of the Representative, instead of doing it itself, should not under the circumstances as presented herein result in a different type of analysis or outcome when examining the *Pioneer* factors. Accordingly, the Court must focus on (1) Teligent's actions, in that the alleged Preference Claim arose upon the filing of its own bankruptcy case, and (2) Teligent's knowledge, if any, it had regarding the Debtor's bankruptcy proceedings, to determine if its reasons for delay are excusable.

The Court first notes that when Teligent filed its voluntary chapter 11 bankruptcy petition, it assumed the status of "debtor in possession," *see* 11 U.S.C. §§ 101(13), 1101(1), and, as such, it acquired most of the rights, powers, functions and duties of a bankruptcy trustee, *id.* § 1107(a), includ-

ing the power to pursue preference claims under section 547 of the Bankruptcy Code. The record reflects that Teligent was aware it had preference claims and it is hard to imagine that the large amount of its Preference Claim, that is, $1,399,077.22, would not have been noticed in its preliminary review process. Here, where there is a significant Preference Claim on its face and Teligent and the Debtor are both in a distressed industry in which collection of any amount from an industry participant may be frustrated by such entity's financial condition, it would have been reasonable for Teligent, even without actual notice of the Debtor's bankruptcy case, to inquire about the Debtor and potential recovery of such a large claim. If Teligent had made such an inquiry, it would have discovered that the Debtor had filed a bankruptcy petition, a plan of reorganization and disclosure statement on June 17, 2002, it was pursuing an expedited reorganization process, and recovery for unsecured creditors was relatively small under the proposed plan.

Teligent's Disclosure Statement filed on July 11, 2002 clearly indicates that although Teligent was aware after preliminary review that section 547 preference actions existed, it made an informed decision to get its plan confirmed first (that is, on September 6, 2002) and afterwards have the Representative complete review of such actions and pursue them on a post-confirmation basis pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Accordingly, it was within the reasonable control of Teligent to file a timely claim, but it opted to forego such a filing until after confirmation of its plan and thereby assumed the reasonably foreseeable consequences of such a determination. There is nothing in the record that would support a finding that Teligent could not have made an inquiry regarding any particular preference claim, the collection of which may have been negatively impacted with the passage of time, and not simultaneously pursued its primary goal of getting its plan confirmed. Teligent simply decided to pursue its primary goal and not take any simultaneous action with respect to any of the alleged avoidance actions regardless of their size or collectibility. Further, the record does not establish that Teligent could not have taken some action, if it chose, to preserve its rights while continuing its efforts to confirm its case. This Court is not in a position to question the reasonableness of Teligent's decisions in the context of the administration of such case, but merely examines the circumstances that contributed to the delay in the filing of the Proof of Claim.

Moreover, assuming Teligent was aware of the Debtor's bankruptcy case, Teligent possibly might have decided not to pursue the Preference Claim realizing that it likely would have only recovered a *de minimis* amount under the Debtor's Plan. Indeed, under the particular circumstances of (1) Teligent and the Debtor being in the same distressed telecommunications industry, (2) the enormous size and extensive media coverage of the Debtor's bankruptcy case, (3) Teligent's sophisticated bankruptcy counsel's likely awareness of the Debtor's case, (4) Bar Date Notice being published in the national edition of *The Wall Street Journal* on July 3, 2002 that its bankruptcy counsel likely would have read, and (5) both Teligent and the Debtor's bankruptcy proceedings being held in the same courthouse, the Court agrees with the Debtor that it is highly suspect that Teligent or its bankruptcy counsel remained completely unaware of the Debtor's bankruptcy filing. Accordingly, at the September 3, 2003 hearing, the Court ordered the Representative and Teligent to provide supplemental affidavits clarifying whether they had actual knowledge of the Debtor's case. In response, the Representative and Teligent filed affidavits noting their lack of knowledge of the Bar Date, but they failed to

clarify whether they were actually aware that the Debtor had filed for bankruptcy in this district or to provide any other information regarding what Teligent and its bankruptcy counsel may have possessed with respect to the Debtor's bankruptcy and when they might have acquired such information.

Based on the foregoing, the Court finds that the reason for delay factor weighs in favor of the Debtor.

### 4. *Whether Movant Acted In Good Faith*

The Representative notes that since the primary reason for its late filing of the Proof of Claim was the result of the Debtor's failure to notify Teligent of the Bar Date and because the Representative immediately filed the claim upon verifying that Teligent made preferential payments to the Debtor, the Representative thereby acted in good faith.

In reply, the Debtor maintains that while there is no indication the Representative acted in bad faith, it did not take discovery on the issue and thereby reserves the right to argue that the Representative did not act in good faith. However, at oral argument the Debtor did not argue that the Representative did not act in good faith.

■ While the Representative was appointed as the Teligent estate's claims representative to pursue, *inter alia*, section 547 preference actions and accordingly is the movant in this matter, the Court finds that Teligent's good faith must still be taken into consideration, especially where (1) the appointment of the Representative was consensual and not as a reaction to any lack of diligence or breach of duty by Teligent as a debtor in possession and (2) as stated previously, the Representative is effectively the successor in interest to Teligent's rights to pursue avoidance actions and there is no reason to distinguish the actions of the Representative from those of Teligent. In particular, the Court notes that Teligent failed to provide, as per the Court's September 3, 2003 order, any sworn statement regarding what Teligent or its bankruptcy counsel actually knew about the Debtor's bankruptcy proceedings. Instead, Teligent's in-house counsel merely asserts in its October 16, 2003 affidavit that Teligent's officers and herself were unaware of the Bar Date prior to September 3, 2003. Moreover, this assertion is contrary to the Representative's September 19, 2003 affidavit that states on or around October 2002 it inquired with Teligent's in-house counsel whether Teligent had received the Debtor's Bar Date Notice and Teligent responded that it did not receive such notice.

Furthermore, while the Representative recognized in its September 19, 2003 affidavit that it had the right to require Teligent to comply with the Court's request for additional information as to the company's knowledge of the Debtor's bankruptcy case, the Court notes the Representative failed to pursue such compliance. In addition, although the Representative explains in its September 19, 2003 supplemental affidavit why it sought clarification as to its authority before it filed the Proof of Claim, it failed to fully explain, as the Court directed, why it stated in its Motion that neither Teligent nor itself had knowledge of the Debtor's bankruptcy case prior to the Debtor's Confirmation Date, yet the Representative's October 14, 2002 e-mail in the Global Crossing bankruptcy case demonstrates an awareness of the Debtor's bankruptcy case on the date of such e-mail, that is, prior to the Confirmation Date.

The Court thereby finds that Teligent and the Representative failed to establish their burden that they acted in good faith. Therefore, the good faith factor weighs in favor of the Debtor.

## IV. Conclusion

The Court concludes that because Teligent was an "unknown" creditor when the Debtor filed its Schedules, Teligent was not entitled to actual notice of the Notice of Commencement and the Bar Date. Rather, publication notice was adequate due process for Teligent. Further, in considering all of the *Pioneer's* factors, the Court finds that the equities of the situation strongly weigh in favor of the Debtor in not deeming the late-filed Proof of Claim as timely based upon "excusable neglect" under Bankruptcy Rule 9006(b)(1).

Therefore, for the reasons set forth in this Memorandum Decision, it is hereby:

ORDERED, that Representative's Motion is DENIED; and it is further

ORDERED, that the Proof of Claim is EXPUNGED.