In re AGWAY, INC., Debtor.

In re Agway General Agency, Inc., Debtor.

In re Brubaker Agronomic Consulting Service, LLC, Debtor.

In re Country Best Adams, LLC, Debtor.

In re Country Best–Deberry, LLC, Debtor.

In re Feed Commodities International, LLC, Debtor.

Nos. 02–65872 to 02–65877.

United States Bankruptcy Court, N.D. New York.

Dec. 31, 2003.

Eustace & Marquez, John R. Marquez, Esq., Of Counsel, White Plains, NY, Attorneys for Westfalia Associated Technologies, Inc.

Menter, Rudin & Trivelpiece, P.C., Jeffrey A. Dove, Esq., Of Counsel, Syracuse, NY, Attorneys for Debtors.

Hancock & Estabrook, Stephen A. Donato, Esq., Of Counsel, LLP, Syracuse, NY, Attorneys for GECC.

Martin, Martin & Woodard, Lee E. Woodard, Esq., Of Counsel, Syracuse, NY, Attorneys for Unofficial Creditors Committee of Agway Retirees.

Green & Seifter, LLP, Michael Balanoff, Esq., Of Counsel, Syracuse, NY, Attorneys for Unofficial Creditors Committee.

Guy A. Van Baalen, Utica, NY, for Assistant U.S. Trustee.

## MEMORANDUM–DECISION, FIND-INGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed by Westfalia Associated Technologies, Inc. ("Westfalia") on August 13, 2003, seeking (a) an order pursuant to Rules 3003(c)(3) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.") enlarging the period in which Westfalia may file a proof of claim and (b) an order pursuant to section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"), and Fed.R.Bankr.P. 4001 and 9014 to lift the automatic stay in order to resume a pending state court action. Agway, Inc. ("Agway" or the "Debtors") and the Official Committee of Unsecured Creditors have each filed an objection to Westfalia's motion.

The motion was heard at the Court's regular motion term in Utica, New York on September 30, 2003. At the conclusion of the September 30th hearing, the Court reserved decision on the request to lift the automatic stay until it determined whether to grant Westfalia's request to extend the period in which it may file a proof of claim. The Court provided the parties an opportunity to file memoranda of law. Oral argument was heard again on October 28, 2003, and the matter was submitted for decision on that date.

### JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this contest-ed matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (B), and (O).

### FACTS

On March 23, 2001, Ronald Rogers ("R. Rogers"), an employee of the Debtors, and his wife, Lisa A. Roles Rogers ("L. Rogers" and collectively with R. Rogers, the "Plaintiffs"), sued Westfalia, a manufacturer of industrial conveyors, in the United States District Court for the Northern District of New York, Albany Division (the "Rogers' Action"). *See* Westfalia's Mot. at Ex. A. In their complaint the Plaintiffs allege seven causes of action and pray for $61 million in damages[1] stemming from injuries R. Rogers claims to have sustained after falling eight to ten feet from a conveyor system manufactured by Westfalia that he was servicing at the Debtors' feed mill in Guilderland, New York. *See id.* The Plaintiffs served their complaint on Todd R. Graybill, Westfalia's controller ("Graybill"). *See id.*

On August 2, 2001 Westfalia impleaded Agway Feed Mill, an entity under the Debtors' control, among other parties, in the Rogers' Action. In a letter dated January 16, 2002, Paul G. Ferrara, Agway's counsel in the Rogers' Action ("Ferrara"), notified Plaintiffs' counsel and John R. Marquez, Westfalia's personal injury defense counsel ("Marquez"),[2] that Agway's insurer, Reliance Insurance Co. ("Reliance"), entered receivership in New York Supreme Court, New York County, and that as a result the state court stayed all proceedings involving Reliance until October 2002. *See id.* at Ex. E. Another result

---

**1.** Specifically, R. Rogers requests $10 million for each of six claims sounding in tort and contract, while L. Rogers has asserted a derivative claim for which she requests $1 million in damages. *See* Westfalia's Mot. at Ex. A.

**2.** During the hearings of September 30th and October 28th, Marquez stated that he was assigned to defend Westfalia in the Rogers' Action by Westfalia's insurer. Similarly, Ferrara was assigned as counsel for Agway in the Rogers' Action by the Debtors' insurer and did not represent Agway in other matters.

of the Reliance receivership, according to the Debtors, is that, should the Plaintiffs' claim be proven, they may have to pay $25,500,000 of the first $26 million of the judgment. *See* Debtors' Obj. ¶¶ 31–33.

On October 1, 2002, the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Code. In a letter dated October 8, 2002, Ferrara notified Marquez that the Debtors filed for bankruptcy protection and that any pending lawsuits were automatically stayed. *See* Westfalia's Mot. at Ex. F. According to statements made by Marquez at the October 28th hearing, the Rogers' Action is currently in the pre-discovery phase as a result of the two stays.

The Debtors listed the Rogers' Action on page 8 of Exhibit 4 to their Statement of Financial Affairs as one of the many lawsuits to which they are a party. Additionally, the Debtors listed Westfalia on page 645 of Exhibit F–1 to their voluntary petition as an nonpriority unsecured creditor with a claim of no value and described as "AP–ADMIN." On page 509 of the same exhibit the Debtors also listed Rogers as an unsecured creditor with a disputed, contingent, and unliquidated claim of no value.

In an affidavit dated August 8, 2003, Graybill states that on or about March 17, 2003, he received the Debtors' bar date notice and a proof of claim form preprinted with Westfalia's name and address and listing a liquidated claim for no value. *See id.* at Ex. G ¶¶ 3–4. Below Westfalia's preprinted claim information on the proof of claim form the following sentence is printed in a capitalized typeface: "If you agree with the amount scheduled by the debtors and have no other claims against the debtors, you do not need to file this proof of claim." *Id.* at Ex. G. The form also provides "personal injury/wrongful death" as one of the choices in the catego-

ry entitled "Basis for Claim." *Id.* The bar date notice in the last line of its four pages states in a capitalized, boldfaced and underlined typeface that "[a] claimant should consult an attorney regarding any other inquiries, such as whether such claimant should file a proof of claim." Debtors' Obj. at Ex. B.

Graybill asserts that after noting the zero-value claim on the proof of claim form he reviewed Westfalia's accounts receivable records, which revealed that the Debtors did not owe money of that nature to Westfalia. *See* Westfalia's Mot. at Ex. G ¶ 4. Graybill states that he then determined that Westfalia did not need to file a proof of claim. *See id.* ¶ 5. Graybill further submits that he did not have "knowledge, nor cause to believe, that failure to submit a proof of claim might impact [Westfalia's third-party action against the Debtors in the Rogers' Action]." *Id.* ¶ 6. Graybill admits, however, that he did not forward the notice of bar date or the proof of claim form to an attorney. *See id.*

In both hearings on this motion, Marquez claimed that he never received notice of the bar date from Ferrara, despite Ferrara's letter in which he stated that he would "pass [ ] along" any additional information concerning the bankruptcy. *Id.* at Ex. F. Nor did he receive any material concerning the case from Graybill. He also concedes, however, that had Graybill chosen to forward the claim papers to an attorney, he would have sent them to Westfalia's outside counsel, not Marquez.

On August 13, 2003, eighty-five days after the bar date of May 30, 2003, Westfalia filed the motion under consideration seeking to file a proof of claim for the potential judgment against Agway in the Rogers' Action.

## ARGUMENTS

Westfalia argues that its failure to timely file a proof of claim is excusable because

Graybill's inadvertent and mistaken assumption that the Debtors did not owe any money to Westfalia was reasonable in light of the indication of a zero-value claim on the proof of claim form, his confirmation that no accounts receivable were due from Agway, and language in the notice of bar date and proof of claim form that led Graybill to assume that he need not consult an attorney. Westfalia also cites Debtors' failure to forward the notice of the bar date and a proof of claim form to Marquez as a second reason to excuse Westfalia's delay.

The Debtors contend that Westfalia's failure to timely file a proof of claim was inexcusable because it had actual notice of the bar date and had ample time to file a proof of claim. The Debtors also argue that they had no duty to provide Marquez with a notice of the bar date.

### DISCUSSION

### I. Enlargement of time in which to file a proof of claim

#### 1. The bar date and excusable neglect

█ Fed.R.Bankr.P. 3003(c)(3) authorizes bankruptcy courts to set a bar date and extend the time for filing proofs of claim for "cause shown." The order establishing a bar date is "an integral part of the reorganization process," *First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),* 937 F.2d 833, 840 (2d Cir.1991), "serv[ing] the important purpose of enabling the parties in interest to ascertain with reasonable promptness the identity of those making claims against the estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *In re Best Prods. Co.,* 140 B.R. 353, 357 (Bankr.S.D.N.Y.1992) (citing *Hooker Investments,* 937 F.2d at 840).

█ Courts may grant requests filed after the bar date seeking to enlarge the time in which to file proofs of claims if the claimant's "failure to act was the result of excusable neglect." Fed.R.Bankr.P. 9006(b)(1). The burden of proving the existence of excusable neglect rests with the movant. *See In re XO Communications, Inc.,* 301 B.R. 782, 794–95 (Bankr.S.D.N.Y. 2003).

█ The Supreme Court fashioned the test for finding excusable neglect in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The *Pioneer* test is an equitable one, requiring courts to consider "all relevant circumstances surrounding the party's omission, including [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489. Regarding the application of the *Pioneer* factors, the Court echoes *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31 (N.D.N.Y.1995), *aff'g* No. 90–02053 (Bankr. N.D.N.Y. Sept. 22, 1994), which states that *Pioneer* "does not express a requirement that each factor be unmet in order to find no excusable neglect." *Id.* at 36. Though the Supreme Court set forth a fairly liberal standard in *Pioneer,* it clearly stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489.

#### 2. The *Pioneer* factors

##### a. *Prejudice to the Debtors*

Westfalia contends that allowing it to file its proof of claim will not prejudice the Debtors, contending that the Debtors

knew about Westfalia's claim twenty months before the bar date and should be charged with an expectation that the claim would be filed. Debtors counter that they are prejudiced by Westfalia's claim because its allowance would disrupt the progress of plan formulation and would give rise to a raft of claims filed by other untimely claimants.

■ The court in *Manousoff v. Macy's Northeast, Inc. (In re R.H. Macy & Co.)*, 166 B.R. 799 (S.D.N.Y.1994), stated that "the inquiry into prejudice to the estate does not stop with dollar-for-dollar depletion. The analysis depends upon a broader consideration of the circumstances." *Id.* at 802. "[T]he size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, [and] the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated" are among the several factors courts should consider. *In re Keene Corp.*, 188 B.R. 903, 910 (Bankr.S.D.N.Y. 1995) (citing *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg.)*, 62 F.3d 730, 737–38 (5th Cir.1995), and *Manousoff*, 166 B.R. at 802). Courts have also considered the potential detriment that a surge in late-filed claims would wreak on a case following the grant of a motion to extend time to file. *See id.* at 913; *In re Hills Stores Co.*, 167 B.R. 348, 352 (Bankr. S.D.N.Y.1994); *In re Specialty Equip.*

*Cos.*, 159 B.R. 236, 239 (Bankr.N.D.Ill. 1993).

■ The allowance of this claim would prejudice the Debtors. Militating against a finding of prejudice are the facts that the Debtors have not yet filed a plan and that they were aware of the Rogers' Action and could factor their potential liability for the judgment in that action into the economic model on which the plan is to be based. On the other hand, it is reasonable for the Debtors to have relied on the finality of the bar date and, on the basis of that finality, to begin formulating a plan of liquidation based on the universe of claims that were timely filed.[3] Another prejudicial effect that would flow from the allowance of Westfalia's claim is that it would encourage other claimants who have not timely filed proofs of claim to move the Court to enlarge the time in which they too could file proofs of claim, thereby wasting judicial resources and requiring the Debtors to defend each motion, which would unnecessarily deplete their estates.[4] Accordingly, the Court finds that the Debtors would be prejudiced by Westfalia's claim.

### b. *Length of delay*

The length of delay in this case is eighty-five days. By order dated March 6, 2003, the Court established May 30, 2003 as the bar date in this case and approved the form of notice of bar date and the proof of claim form. Westfalia filed the present motion with the Court on August 13, 2003.

3. While the Court cannot ascertain the extent of progress the Debtors have achieved thus far in formulating a plan of liquidation, it appears that the Debtors have expended substantial amounts of time toward finalizing a plan suitable for filing with the Court. The Court also recognizes that allowance of Westfalia's claim, listed as $61 million and representing over 13% of the Debtors' total unse-

cured liabilities scheduled in the case, may upset whatever progress the Debtors have made vis-a-vis plan formulation.

4. This is no mere conjectural assertion. As of December 24, 2003, there were three motions pending in this case that were filed by late claimants seeking to enlarge the time in which they could file proofs of claim.

Westfalia claims that the length of delay in this case should not bar it from filing its proof of claim, citing *In re Sage–Dey, Inc.,* 170 B.R. 46 (Bankr.N.D.N.Y.1994), a case in which this Court allowed the Internal Revenue Service ("IRS") to file a claim six months after the bar date. In their Memorandum of Law the Debtors cite a case in which a proof of claim was filed 18 days after the bar date but nonetheless denied. *See In re Rose's Stores, Inc.,* 165 B.R. 410 (Bankr.E.D.N.C.1994).

■ Whether a claimant's delay persisted for a few days or for many months, length of delay alone is not dispositive of whether a movant's neglect is excusable. The significance of delay, as well as each of the other *Pioneer* factors, will depend on the circumstances surrounding it. Hence, the impact that length of delay will have on a case will depend on the rule under consideration and the factual background of the case. In *Sage–Dey,* the IRS's lapse of six months did not prevent this Court from allowing its claim because the debtor, by failing to report the data on which the IRS's new claim was based, was instrumental in causing the delay. *See Sage–Dey,* 170 B.R. at 53. In *Rose's Stores,* the claimant lodged a personal injury action against the debtor in state court prepetition and received notice of the bar date in the debtor's bankruptcy. *See Rose's Stores,* 165 B.R. at 411. The claimant's delay was caused by her counsel having misplaced the notice of bar date. *See id.* The court rejected the debtor's late claim, despite its declared value of a mere $11,000, reasoning against allowance on the ground that a prejudicial precedent would be set in a case in which there were a great many late filers. *See id.* at 412.

■ In this case Westfalia's delay of eighty-five days will have a minimal impact on the proceeding. The Debtors, although they are in the midst of negotiating a plan of liquidation, have yet to file a disclosure statement and plan with the Court. Accordingly, inclusion of Westfalia's claim at this stage, while certainly inconvenient and potentially prejudicial to the substance of plan negotiations, will not severely impact the temporal underpinnings of plan formulation. As in *Rose's Stores* and *Sage–Dey,* in which consideration of length of delay was inseparable from the reason for delay or its prejudice effects, the Court must examine Westfalia's lapse against the backdrop of the other *Pioneer* factors. Considering that the Court has found that allowing the claim would prejudice the Debtors, it must be made clear that the insignificance of the length of delay in this case in no way diminishes the claim's prejudicial effect.

#### c. *Reason for delay*

■ Westfalia posits two reasons for its delay in filing a proof of claim in this case. First, Westfalia argues that it was excusable that Graybill, the recipient of the notice of bar date, did not understand that a potential judgment in a pending lawsuit was a claim for bankruptcy purposes and that failing to file a proof of claim listing the potential judgment would nullify any present or future right of Westfalia to collect any portion of a judgment from the Debtors. Westfalia also contends that the notice led Graybill to believe that consulting an attorney was unnecessary. Westfalia claims that Graybill, after noting the proof of claim form that the Debtors' mailed to him, reviewed the sales activity between the two companies and confirmed that Westfalia did not have a debt with Agway. *See* Westfalia's Letter Mem. of Law at 5; Westfalia's Mot. at Ex. G. ¶ 4. Graybill admits, however, that after having been satisfied that Westfalia had no claim against Agway he did not forward the notice to an attorney.

Code § 101(5) defines a "claim" as a "right to payment, whether or not reduced to judgment . . . ." 11 U.S.C. § 101(5)(A). A pending cause of action is incontrovertibly a claim. *See Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods.)*, 209 F.3d 125, 128–29 (2d Cir.2000). The Debtors' bar date notice clearly recommends that recipients consult counsel, especially those unsure whether they have a claim. The exhortation in the notice of bar date to various scheduled claimants not to file clearly applies to those who "do not dispute the amount or nature of [their] claim." Westfalia undoubtedly would dispute that its claim is of no value. Graybill's admitted ignorance of the Code does not move this Court to excuse his conduct. Just as this Court decided in *O.W. Hubbell* that failure to monitor the case, a lack of office procedures for processing legal documents, and a general indifference to the bankruptcy process were within the control of the claimant and were inexcusable, the Court finds Graybill's omission and his reasons for it within his control and similarly lacking. *See Hubbell*, No. 90–02053, at 11, 13; *see also Keene*, 188 B.R. at 912 (rejecting a late-filed claim that resulted from a "breakdown in [the claimant's] internal procedures and communications").

■ Westfalia's second reason for delay is equally unavailing. Westfalia argues that Ferrara was duty-bound to provide Marquez with notice of the bar date and that his failure to do so excuses Westfalia's delay. After the Debtors' provided Westfalia with notice of their bankruptcy filing and notice of the bar date, they fulfilled their duty to provide notice to Westfalia under Fed.R.Bankr P.2002(a) and 2015(a). At any point in the proceeding, Marquez could have filed a notice of appearance in order to receive notice of other pleadings filed with the Court. Fed.R.Bankr.P. 9010(b) plainly affords parties the right to receive notices and pleadings in a case once "[a]n attorney appearing for a party . . . file[s] a notice of appearance with the attorney's name, office address and telephone number." Marquez's reliance on Ferrara, who was assigned by the Debtors' insurer and did not represent Agway in any other matters, to keep him apprised of the case instead of filing a notice of appearance is inexcusable. *See In re R.H. Macy & Co.*, 161 B.R. 355, 360, 362 (Bankr.S.D.N.Y.1993). As stated by the Supreme Court in *Pioneer*, "ignorance of the rules, or mistakes construing the rules" are not excusable. *Pioneer*, 507 U.S. at 392, 113 S.Ct. 1489.

Had Graybill simply consulted a lawyer—preferably one specializing in bankruptcy law—before dismissing the need to file a proof of claim in this case or had Marquez filed a notice of appearance, Westfalia's motion in all likelihood would not have been necessary. Because these omissions were clearly within Westfalia's reasonable control, the Court is unpersuaded by its stated reasons for delay.

d. *Good faith*

The Debtors do not dispute that Westfalia has acted in good faith in filing the instant motion. *See* Debtors' Mem. of Law at 4 n. 2. The Court finds nothing in the record to the contrary and, accordingly, finds that Westfalia has submitted its motion in good faith.

■ In conclusion, the Court finds that Westfalia's neglect is inexcusable, specifically because Westfalia's reasons for delay were within its reasonable control and because allowing Westfalia's large claim at this stage in the proceeding would prejudice the Debtors and cause an undue depletion of the Debtors' estates as a result of defending the claims of other late filers piggybacking on a decision favorable to Westfalia. Despite Westfalia's good faith

 

in submitting its motion and the minimal impact of the length of delay in this case, the Court finds that Westfalia's neglect to timely file its proof of claim was inexcusable under Fed. R. Bankr.P. 9006(b)(1) and *Pioneer.*

Based on the foregoing reasons, the Court denies Westfalia's motion to enlarge the time in which to file a proof of claim.

## II. Automatic Stay

■ The Court's denial of Westfalia's motion to enlarge the time in which it may file a proof of claim does not per se foreclose Westfalia from obtaining relief from the automatic stay and resuming its state court action against the Debtors nominally in order to procure payment of a potential judgment from Reliance. *See Green v. Welsh,* 956 F.2d 30, 33–35 (2d Cir.1992); *Bank of India v. Trendi Sportswear, Inc.,* No. 89 Civ. 5996(JSM), 2002 WL 84631, at *4–7 (S.D.N.Y. Jan.18, 2002); *Royal Ins. Co. of Am. v. McCrory Corp.,* No. 94 Civ. 5734(SS), 1996 WL 204482, at *1–2 (S.D.N.Y. April 25, 1996). The *McCrory* court pointed out that in a situation in which a party "sues the debtor only to establish liability against a third party, and where the bankruptcy court is persuaded that allowing the action to go forward will not burden the estate or prejudice other creditors, the plaintiff's failure to file a proof of claim should not, and does not, preclude it from recovering against the debtor's insurer." *McCrory,* 1996 WL 204482, at *1.

However, the Court at this time is not adequately apprised of the status of Agway's insurer, Reliance, in order to determine whether allowing the Rogers' Action to proceed will or will not burden the estates or prejudice other creditors. Ac-

cordingly, Westfalia's motion to lift the automatic stay is denied without prejudice.

IT IS SO ORDERED.