In re AGWAY, INC., Debtor.

In re Agway General Agency, Inc., Debtor.

In re Brubaker Agronomic Consulting Service, LLC, Debtor.

In re Country Best Adams, LLC, Debtor.

In re Country Best–Deberry, LLC, Debtor.

In re Feed Commodities International, LLC, Debtor.

Nos. 02–65872 to 02–65877.

United States Bankruptcy Court, N.D. New York.

April 19, 2004.

---

Flink, Smith & Associates, LLC, Edward B. Flink, Of Counsel, Latham, NY, Attorneys for Empire Agri–Systems, Inc.

James M. Brooks, Lake Placid, NY, for James Lantry.

Smith, Sovik, Kendrick & Sugnet, P.C., Gabrielle Mardany Hope, Of Counsel, Syracuse, NY, Attorneys for Chore Time Brock, Inc.

Menter, Rudin & Trivelpiece, P.C., Jeffrey A. Dove, Of Counsel, Syracuse, NY, Attorneys for Debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court are three motions filed separately by Empire Agri–Systems, Inc. ("Empire"), James Lantry ("Lantry"), and Chore Time Brock, Inc. ("CTB" and together with Empire and Lantry, the "Movants") seeking, *inter alia,* to enlarge the period in which to file proofs of claim in this case pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."). Objections to each of these motions were filed on December 12, 2003 by Agway, Inc. and its subsidiary debtor companies ("Agway" or the "Debtors"). Oral argument on the motions was held on January 6, 2004 during the Court's regular motion term in Syracuse, New York, after which the Court provided the parties an opportunity to submit memoranda of law. Argument was continued in Syracuse on February 3, 2004. The parties were permitted to submit additional memoranda of law by February 29, 2004, the date on which the matter was submitted for decision.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (B), and (O).

### FACTS

The Court in an Order dated March 6, 2003 established May 30, 2003 (the "Bar Date") as the last day on which creditors could file proofs of claim in this case. *In re Agway, Inc.,* No. 02–65872, Doc. No. 494 (Bankr.N.D.N.Y. Mar. 6, 2003). The Debtors' notice of bar date (the "Bar Date Notice") stated in a capitalized, boldface, and underlined typeface that "[a] claimant

should consult an attorney regarding any other inquiries, such as whether such claimant should file a proof of claim." Debtors' Obj. to Empire, filed Dec. 12, 2003, at Ex. B; Debtors' Obj. to Lantry, filed Dec. 12, 2003, at Ex. B; Debtors' Obj. to CTB, filed Dec. 12, 2003, at Ex. B. A declaration of the Debtors' claims agent dated March 26, 2003, attests to the service of the Bar Date Notice to all scheduled creditors. Debtors' Obj. to Empire, filed Dec. 12, 2003, at Ex. C. After receiving the Court's approval, the Debtors also published a truncated version of the Bar Date Notice in the New York Times, Wall Street Journal, and Syracuse Post–Standard. *See In re Agway, Inc.*, No. 02–65872, Doc. No. 494 (Bankr.N.D.N.Y. Mar. 6, 2003). The Debtors also sent creditors proof of claim forms preprinted with data gleaned from Schedule F of their bankruptcy petitions. The proof of claim form includes the following sentence printed in a capitalized typeface: "If you agree with the amount scheduled by the debtors and have no other claims against the debtors, you do not need to file this proof of claim." Reply Affidavit of Edward B. Flink, Esq., filed Jan. 5, 2004 ("Flink Reply Aff."), at Ex 1.

The Movants are co-defendants in a civil action filed on July 24, 2001 by Gerald S. Warren ("Warren") and his wife, Brenda, in New York State Supreme Court, St. Lawrence County (the "State Court"). *Warren v. Lantry, et al.*, No. 109037 (N.Y.Sup.Ct. July 24, 2001). In his complaint, Warren alleges that on December 1, 2000, while acting within the scope of his employment by Agway as a truck driver, he suffered bodily injuries after falling twenty-five to thirty feet from a feed bin manufactured by CTB and sold by Empire. Complaint, *Warren v. Lantry, et al.*, filed July 24, 2001, ¶¶ 5, 9, 19, 27. Warren alleges that he sustained "multiple severe fractures to his left pelvis and hip, rib fractures, injuries to his elbow and left knee, multiple large lacerations and other injuries, both physiological and psychological," characterizing them as "debilitating and permanent." *Id.* ¶ 19. He further alleges that "as a consequence of his numerous and severe injuries, [he] is totally disabled from employment." *Id.* ¶ 23. Warren asserts negligence causes of action against each of the Movants and prays for $5 million in damages from each defendant. *Id.* ¶¶ 24, 34, 48. His wife is also suing the Movants jointly for loss of consortium, seeking $1 million damages. *Id.* ¶¶ 52–53.

Richard F. Hunter, Empire's former counsel, stated that Warren's doctor, Stephen J. Incavo, M.D., reported in a deposition dated April 16, 2003 that Warren's hip replacement surgery had failed and opined that Warren may have to live without a hip. Corrected Affidavit of Richard F. Hunter, Esq., filed Nov. 17, 2003 ("Hunter Aff."), ¶ 9; Deposition of Stephen J. Incavo, M.D., dated Apr. 16, 2003 ("Incavo Dep."), at 17–18 *in* Flink Reply Aff., at Ex. H. Warren's supplemental bill of particulars in the State Court action, filed October 29, 2003, provides the opinions of three physicians in which they conclude that Warren is totally disabled. Hunter Aff., at Ex. D. Empire's counsel began preparing Empire's third-party complaint against the Debtors before Warren amended his bill of particulars. Reply Affirmation of Richard F. Hunter, Esq., filed Jan. 5, 2004 ("Hunter Reply Aff."), ¶ 13; Tr. of Jan. 6, 2003 Hr'g, at 10.

Warren's worker's compensation insurance benefits, including medical expenses, were paid by Agway. On March 8, 2002, Agway's third-party worker's compensation claims administrator, Bassett Gallagher, sent a notice of lien to Warren. *See* Agway Notice of Lien, dated Mar. 8, 2002, *in* Flink Reply Aff., at Ex K.

Lantry, a dairy farmer in Helena, New York, owns the farm on which Warren was injured and, according to the Debtors, is also a holder of one share of Agway stock. Affidavit of James Lantry, filed Nov. 17, 2003 ("Lantry Aff."), ¶ 1; Debtors' Obj. to Lantry, filed Dec. 12, 2003, ¶ 10. The Debtors contend that they mailed Lantry a notice of the commencement of the case to Route 3, Box 314C, Massena, New York 13662. Debtors' Obj. to Lantry ¶ 9. Lantry claims that that address is incorrect and that he never received notice of the commencement of the case.[1] Lantry Aff. ¶ 6. The Debtors claim that an Agway dividend check was also mailed to the Route 3 address in July of 2002 and was cashed on August 5, 2003. Debtors' Obj. to Lantry ¶ 12. Lantry contends that his current address is 1736A County Road 37 in Helena, New York and supplies Agway feed invoices dating back to 1997 that refer to this address. Lantry Aff., at Ex. 6. Agway contends that it never received a notice of address change from Lantry. *Id.*

Empire, a scheduled creditor of the Debtors, received the Bar Date Notice and three pre-printed proof of claim forms. Flink Reply Aff. ¶ 7. One form listed a debt of $22.79 and the two other forms each listed a zero-value claim amount. Flink Reply Aff., at Ex. I. John Virgil, the general manager of Empire, after receiving the Bar Date Notice and proof of claim forms at Empire's Auburn, New York offices, "instantaneous[ly]" determined that it was not worth filing a proof of claim. Affidavit of Jeffrey McIntyre, filed Jan. 5, 2004, ¶¶ 6–8; *see* Flink Reply Aff. ¶ 8.

CTB alleges that it did not receive the Bar Date Notice. Affidavit of Gabrielle Mardany Hope, Esq., filed Nov. 20, 2003, ¶ 9.

**ARGUMENTS**

Lantry and CTB challenge the adequacy of the Debtors' notice of the Bar Date. Lantry argues that he neither received notice of the commencement of the Debtors' case nor of the Bar Date. The Debtors contend they sent the notice of the commencement of the case to an address to which they previously sent dividend checks that were allegedly cashed by Lantry. Lantry disputes the accuracy of the address cited by the Debtors.

CTB argues that the Debtors did not fulfill their duty to send it the Bar Date Notice. CTB contends that the Debtors were duty-bound to provide notice to CTB because it was a known creditor of the Debtors at the time they served the Bar Date Notice. The Debtors argue that CTB was not a known creditor because its claim was speculative at the time when they provided notice of the Bar Date and therefore publication notice satisfied their duty to apprise CTB of the Bar Date.

Each of the Movants argues that it should be allowed an extension of the time in which to file proofs of claim under Fed. R.Bankr.P. 9006(c) on the ground that its failure to timely file a proof of claim was excusable. The Movants take the position that their claims were not ascertainable until after the Bar Date, when they learned that Warren's injury was serious enough under New York's Worker's Compensation Law to enable them to sue Agway. The Debtors contend that the Movants had sufficient information before the Bar Date with which to craft contingent proofs of claim based on the prospect that Warren's injury was or would become "grave" under New York law.

1. Lantry contends that he also did not receive the Bar Date Notice. Lantry Aff. ¶ 6. The Debtors argue that Lantry was not entitled to such notice because he was not a known creditor. Debtors' Obj. to Lantry ¶ 13.

## DISCUSSION

The Court will first analyze CTB's and Lantry's challenges of the adequacy of the Debtors' provision of notice before determining whether any of the Movants can file a late proof of claim on the basis of excusable neglect.

## I. Adequacy of notice

### A. CTB

Admittedly, CTB did not receive notice of the commencement of the Debtors' case nor of the Bar Date. Early in the State Court case, Agway's third-party Worker's Compensation claims administrator sent Warren a notice of lien pursuant to § 29 of the New York Worker's Compensation Law.[2] CTB charges that on the basis of their notice of lien the Debtors should be imputed with the knowledge that CTB was a potential known creditor to whom they were obligated to send the Bar Date Notice. The corollary to CTB's argument is that if it was a known creditor, then publication notice was inadequate to apprise it of the Bar Date.

It is quite common for a chapter 11 debtor like Agway, which has a relatively broad geographic operational scope, to notify unknown creditors about the bar date in its case by publishing a notice in certain widely circulated and locally relevant newspapers. *See Mullane v. Centr. Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (sanctioning the practice); Fed.R.Bankr.P.2002(1). The Debtors chose the New York Times, Wall Street Journal, and Syracuse Post–Standard as the print media outlets in which to publish a truncated version of the Bar Date Notice, which the Court approved in an Order dated March 6, 2003. Unless CTB was a known creditor, publication notice satisfied the Debtors' burden to notify CTB of the Bar Date.

CTB will be deemed a known creditor if the Debtors could have readily ascertained that CTB was a potential creditor by searching their books and records. *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 (3d Cir.1995); *Grant v. U.S. Home Corp. (In re U.S.H. Corp.)*, 223 B.R. 654, 659 (Bankr.S.D.N.Y. 1998). In cases in which parties who sued or were sued by a debtor or otherwise held an adverse position in a lawsuit against a debtor courts have held that such parties are known creditors entitled to notice by mail. *E.g., In re Maya Constr. Co.*, 78 F.3d 1395, 1400 (9th Cir.1996); *In re Spring Valley Farms, Inc.*, 863 F.2d 832, 834–35 (11th Cir.1989). However, a debtor

---

**2.** The section provides, in pertinent part, the following:

if an employee entitled to [worker's] compensation [benefits is] injured or killed by the negligence or wrong of another not in the same employ, such injured employee ... need not elect whether to take compensation and medical benefits under this chapter or to pursue his remedy against such other but may take such compensation and medical benefits and ... pursue his remedy against such other .... In such case, the state insurance fund, if compensation be payable therefrom, and otherwise the person, association, corporation or insurance carrier liable for the payment of such compensation, as the case may be, shall have a lien on the proceeds of any recovery from such other, whether by judgment, settlement or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under or provided or estimated by this chapter for such case and the expenses for medical treatment paid or to be paid by it and to such extent such recovery shall be deemed for the benefit of such fund, person, association, corporation or carrier.

N.Y. Workers' Comp L. § 29 (McKinney 2004).

is not required to go so far as to provide notice by mail to parties who have conjectural or speculative claims against it. *In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717, 720 (Bankr.S.D.N.Y.1991). Moreover, a debtor is not charged with the knowledge of the existence of a contingent claim absent a claimant's express statement of its intent to lodge a future claim against the debtor. *See Berk v. Brooks Fashion Stores, Inc. (In re Brooks Fashion Stores, Inc.)*, No. 92 Civ. 1571(KTD), 1994 WL 132280, at *3 (S.D.N.Y. Apr.14, 1994); *In re L.F. Rothschild Holdings, Inc.*, No. 92 Civ. 1129(RPP), 1992 WL 200834, at *4 (S.D.N.Y. Aug.3, 1992); *In re Best Prods. Co.*, 140 B.R. 353, 358 (Bankr.S.D.N.Y. 1992).

The Court concludes that CTB was an unknown creditor to the Debtors. From the Debtors' vantage point, at the time they sent out copies of the Bar Date Notice to known creditors, CTB's claim against them was uncertain and speculative. CTB was a co-defendant in a suit filed by Warren, Agway's employee. The Court does not doubt that Agway's books and records should impute to the Debtors their knowledge of their participation in a prepetition lawsuit. However, at no time prior to the Debtors' dispatch of the Bar Date Notice were they ever brought into Warren's lawsuit by Warren or the Movants. Nor did CTB notify Agway that it was planning to bring a third-party action.

While Bassett Gallagher, Agway's third-party worker's compensation claims administrator, did send a notice of lien to Warren, which he produced to Movants in response to their discovery request, that communication alone cannot bind the Debtors with the knowledge that they may be liable to any of the Movants, CTB included. The notice of lien did not create a link between Agway and CTB to the extent that Agway should have been aware

that CTB might sue it for indemnity and contribution. In fact, the notice of lien was addressed to Warren and was designed to apprise him—and only him—that Agway itself may become his creditor should Warren be entitled to proceeds from a settlement or judgment in his case. Accordingly, the Court will deny CTB's motion on the basis that publication notice was sufficient to satisfy its right to receive notice of the Bar Date.

**B. Lantry**

Lantry challenges the adequacy of notice on the ground that he never received the notice of the commencement of the case to which he was entitled as an equity security holder under Fed.R.Bankr. P.2002(d). A presumption that proper notice was given arises once a debtor proves that the notice was mailed. *In re Bucknum*, 951 F.2d 204, 207 (9th Cir.1991); *In re Treister*, No. 84 Civ. 3508(JFK), 1985 WL 2044, at *2 (S.D.N.Y. July 19, 1985). The Debtors claim that they did mail the notice to Lantry and that their declaration of mailing, dated October 29, 2002, links Lantry to the address of Route 3, Box 314C in Massena, New York. Although denial of receipt does not overcome the presumption of proper notice, it does raise an issue of fact regarding whether the mailing was, in fact, accomplished. *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir.1995).

An inquiry into whether a mailing was accomplished focuses on whether the notice was correctly addressed, affixed with sufficient postage, and properly mailed, and whether the debtor filed a proper certificate of service. *Id.* at 736. Sending a notice by U.S. mail to the recipient's last known address is reasonably calculated to inform the recipient of the contents of the notice and thereby satisfies due process. *Id.*

In this case, the only item in dispute is Lantry's address. Lantry claims that the Route 3 address was incorrect and that the Debtors sent his feed invoices to his correct address in Helena, New York. Thus, one can assume that the Debtors likely had Lantry's Helena address in their feed accounts receivable records and the Route 3 address in their stockholder records. Consequently, the Debtors would have no reason to list Lantry as a creditor entitled to notice of the Bar Date by virtue of the accounts receivable records connected to the Helena address because those records would most likely have revealed that Agway was a creditor of Lantry, not vice versa.

■ The Debtors contend that before they commenced this case they sent a dividend check to the Route 3 address that was cashed many months later, an allegation that Lantry denies. However, it was never proven that Lantry never lived at the Route 3 address. The Route 3 address was the last known address the Debtors had on file for Lantry as a stockholder, and it appears that Lantry had successfully received dividend checks from the Debtors at that address. Because there is no indication that mail had been returned to the Debtors from the Route 3 address, they had no reason to suppose it was incorrect. It was up to Lantry to inform the Debtors of the proper address at which he could receive investor-related correspondence. *See In re Nutri*Bevco, Inc.,* 117 B.R. 771, 781 (Bankr.S.D.N.Y.1990).

■ Moreover, after the Debtors fulfilled their duty under Fed.R.Bankr.P. 2002(d) to provide Lantry notice of the commencement of the case, it was incumbent upon Lantry to file a notice of appearance pursuant to Fed.R.Bankr.P. 9010(b) if he wanted to receive a Bar Date Notice or otherwise remain apprised of the progress of the case. Under Fed.R.Bankr.

P.2002(a)(7), the Debtors were duty-bound to mail the Bar Date Notice only to indenture trustees and creditors, classes of which Lantry, like CTB, was not known to be a member. That Lantry never provided the Debtors with his Helena address nor filed a notice of appearance will not upset the Debtors' satisfaction of due process vis-a-vis Lantry. Thus, the Court finds that the Debtors' publication of the Bar Date Notice satisfied their duty to provide notice to Lantry.

## II. *Westfalia* and excusable neglect

Courts generally do not rule in favor of claimants such as Empire who have neglected to timely file proofs of claim as a result of their failure to communicate with counsel regarding a legal notice or their own or their counsel's disregard of the relevant substantive law governing their claim. *E.g., In re K–Mart Corp.,* No. 03 C 7091, 2004 U.S. Dist. Lexis 3149, at *8 (N.D.Ill. Mar. 1, 2004); *In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 35 (N.D.N.Y. 1995), *aff'g* No. 90–02053 (Bankr.N.D.N.Y. Sept. 22, 1994). In *In re Agway, Inc.,* 313 B.R. 22, No. 02–65872, Doc. No. 1764, 2003 WL 23712245 (Bankr.N.D.N.Y. Dec. 31, 2003) ("*Westfalia*"), a decision rendered earlier in this case, the Court denied the motion of Westfalia Associated Technologies, Ltd. ("Westfalia"), a late claimant whose circumstances were not dissimilar to Empire's. Westfalia impleaded Agway in a personal injury action during the prepetition period. Westfalia failed to timely file a proof of claim after its controller elected not to forward the Bar Date Notice to an attorney. The controller alleged that he did not know that a pending lawsuit could be the basis of a proof of claim. The Court rejected that argument, finding that Westfalia's reasons for delay were unpersuasive and that the Debtors would have been

prejudiced had Westfalia been permitted to file a late proof of claim.

### A. Distinguishing *Westfalia*

As a corollary to its excusable neglect argument, Empire posits a number of assertions to distinguish its position from *Westfalia*. First, it claims that its state law claim did not lie against the Debtors until after the Bar Date passed, unlike Westfalia, which had already impleaded Agway months before the bankruptcy case. Second, Empire contends that the Bar Date Notice and the accompanying preprinted forms were misleading and thus constituted inadequate notice, which was not an issue in *Westfalia*. Third, Empire argues that, in contrast to Westfalia's claim of $61 million, its $6 million claim is a far smaller amount, of which the Debtors will likely pay a proportional share that will be less than 100 percent. Fourth, Empire contends that its attorneys, unlike Westfalia's counsel who knew of the bankruptcy and failed to timely file a proof of claim, did not know of the case nor of the Bar Date and consequently had no reason to act.

The Court finds none of Empire's distinguishing points persuasive.

#### 1. "Claim" under Code § 101(5)(A) and claim accrual

First, there is no doubt that a "claim" as defined in Code § 101(5)(A) and interpreted by case law includes, as in *Westfalia*, already-filed causes of action. However, "it is well-established that a claim is ... allowable ... in a bankruptcy proceeding even if it is a cause of action that has not yet accrued." *In re Cool Fuel, Inc.*, 210 F.3d 999, 1006 (9th Cir. 2000); *accord In re R.H. Macy & Co.*, 67 Fed.Appx. 30, 31–32 (2d Cir.2003); *see* 11 U.S.C. § 101(5)(A) ("claim" includes contingent and unmatured rights to payment).

The statutory basis for Agway's potential liability is § 11 of New York's Worker's Compensation Law, which permits an employee to directly sue his or her employer upon the occurrence of a "grave injury." N.Y. Worker's Comp. L. § 11 (McKinney 2004). The statute's definition of "grave injury" includes death and the amputation or loss of function of a limb, such as a leg. *Id.* In this case, the parties dispute when it was known that Warren's injury was definable as "grave" under § 11. The Debtors contend that such information was available in the affidavit of Dr. Incavo, dated April 16, 2003, over a month before the Bar Date. The Movants contend that Warren's injury was not "grave" until October 29, 2003, when Warren amended his bill of particulars to include the opinions of three physicians, including Dr. Incavo, stating that Warren was totally disabled.

Though the Movants insist that their third-party actions against Agway based on Warren's grave injury did not accrue under state law until after the Bar Date, they fail to realize that, in bankruptcy cases, state law does not determine when a claim arises. The United States Bankruptcy Court of the Southern District of New York in *In re Johns–Manville Corp.*, 57 B.R. 680 (Bankr.S.D.N.Y.1986), has stated that "a prepetition 'claim' may well encompass a cause of action that, under state law, was not cognizable until after the bankruptcy petition was filed." *Id.* at 690; *see In re Caldor, Inc.*, 240 B.R. 180, 191 (Bankr.S.D.N.Y.1999) ("A claim is 'contingent' when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event.").

Three tests are most often cited as governing claim accrual: the conduct test, the prepetition relationship test, and

the fair contemplation test. The conduct test provides that a claim exists at "the time when the acts giving rise to the alleged liability were performed." *Johns–Manville*, 57 B.R. at 690. However, many courts have taken the view that the conduct test may be overly broad, tending to include the claims of parties such as classes of future mass tort claimants who cannot know prepetition that they may have a claim in the future. *See, e.g., In re Chateaugay Corp.*, 944 F.2d 997, 1004 (2d Cir.1991). The prepetition relationship test finds a claim when there is "contact, exposure, impact, or privity between the debtor's prepetition conduct and the claimant." *In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr.S.D.Fla.1994). The *Piper* court fashioned the test to apply to product liability claims for which the debtor would be directly liable. The requirement of contact or exposure is less relevant here as to the Movants' claim against the Debtors for contribution and indemnity. A contributor may be indirectly liable without contact or privity with the injured party. Hence, the Court will not apply the prepetition relationship test. Rather, the Court will apply the fair contemplation test, which provides that a claim exists if, based on the prepetition conduct in question, the parties can fairly contemplate the existence of a claim. *Calif. Dep't of Health Servs. v. Jensen*, 995 F.2d 925, 930 (9th Cir.1993); *In re Nat'l Gypsum Co.*, 139 B.R. 397, 407 (N.D.Tex.1992). While the fair contemplation test was crafted in response to environmental regulatory claims, the Court believes the test can apply to general tort claims.

 Here, the act giving rise to Agway's potential liability was Warren's fall from the feed bin located at Lantry's farm, conduct which indisputably occurred almost two years prepetition. Even though Warren arrived at his current condition after hip replacement surgery failed and the site of his operation became infected, Warren's fall was the principal event that set this unfortunate state of affairs in motion. After Warren's calamitous fall, the Movants were on notice of the wide range of prognoses for Warren's injury, which included amputation or loss of function. One cannot assume that a fifty-two year-old man recovers easily after enduring a thirty-foot fall onto concrete. Dr. Incavo, in his April 2003 deposition, set forth the worst-case scenario of Warren possibly living without a hip. While the most serious prognoses were not certain by any means, they were within the reasonable contemplation of the parties who had knowledge of the circumstances of the fall. The Court cannot excuse the Movants' inaction on the basis of their refusal to consider the gravest possible outcomes of Warren's fall. Moreover, the Court must dismiss out of hand the widely discredited proposition that the Movants' bankruptcy claims did not accrue until they were actionable under state law. *Cf. In re M. Frenville Co.*, 744 F.2d 332 (3d Cir.1984) (holding in favor of state law-based claim accrual questioned by nine courts, criticized by forty more, and distinguished by sixteen others). In fact, Empire, at the January 6th hearing and in its counsel's affirmation, admitted that it began preparing a third-party complaint against Agway before Warren amended his bill of particulars in October 2003, indicating the Movants' impression that Warren's injury was inching ever closer to "grave" status even absent the confirmatory opinions of the three physicians cited in Warren's amended bill of particulars. Tr. of Jan. 6, 2003 Hr'g, at 10; Hunter Reply Aff. ¶ 13. The Court finds that the extent of Warren's injury could have been fairly contemplated by the parties at the time of the accident; therefore, the Court holds that the Movants' claim

for the purposes of this bankruptcy case accrued at that time.

As an aside, it appears to the Court that Empire's counsel was not aware of the Bar Date despite Empire's receipt of the Bar Date Notice and is attempting to bootstrap post-Bar Date reports concerning the gravity of Warren's injury onto its argument that Empire was precluded from filing a proof of claim until a grave injury was cognizable under state law. Had Empire's counsel been actually aware of the Bar Date—presumably, a minimal inquest into their client's relationship with the Debtors would have brought it to light—and informed by an elementary understanding of bankruptcy law—or, more appropriately, pursuant to the New York Code of Professional Responsibility Disciplinary Rule 6–101(a)(1), sought the advice of bankruptcy counsel—it is inconceivable that they would have purposely allowed their client's right to potentially receive payment from the Debtors to expire by failing to file a proof of claim pertaining to Agway's alleged liability for Warren's injury.

### 2. Content of the Bar Date Notice

■ Secondly, the Court notes that the Bar Date Notice and the preprinted proofs of claim that accompanied many of them were not misleading. The Court has already discussed this issue in *Westfalia* and will only briefly reiterate its position. The Bar Date Notice and proof of claim forms sent out by the Debtors were approved by the Court in a Order dated March 6, 2003. Empire argues that the preprinted forms listing *de minimis* or zero-value claim amounts misled it to believe that it had no other claims. Many of the proof of claim forms that the Debtors sent to creditors were preprinted with claim amount data that originally appeared on the Debtors' Schedule F and were merely provided for the convenience of the parties, not as indisputable evidence of the existence and amount of a given claim. Furthermore, there is nothing misleading about the language of the proof of claim form and Bar Date Notice. The form clearly instructs claimants who dispute the preprinted amount to file a proof of claim and provides claimants a space in which they can write in the correct claim amount. The Bar Date Notice exhorts recipients in a capitalized, boldfaced, and underlined typeface to consult an attorney to determine whether they have a claim. The Debtors' obligation to provide Empire notice of the Bar Date does not require them, as Empire otherwise argues, to spoonfeed Empire—one of literally thousands of creditors in this case—the nature and amount of its contingent claim against them. In addition, the proof of claim form includes in the "Basis for Claim" section a checkbox for "personal injury" claims such as the one suffered by Warren, which would have signaled the alert reader to use the form for derivative claims such as indemnity and contribution. *See K–Mart,* 2004 U.S. Dist. Lexis 3149, at \*2. Accordingly, the Court finds, as it has before, that neither the Bar Date Notice nor the proof of claim forms were ambiguous or misleading.

### 3. Lesser claim amount

The amount of the Empire's claim is material to the Court's analysis of prejudice to the Debtors under the test crafted by the United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), which is discussed in greater detail below.

### 4. Ignorance of counsel

■ As alluded to above and in *Westfalia,* Empire's knowledge is imputed to its

counsel. While the Court applauds Empire's counsel's diligent pursuit of their client's defense in the Warren case, it cannot excuse counsel's ignorance of the Debtors' bankruptcy case, especially considering that the Bar Date Notice was a recent communication between the Debtors and their client. Unfortunate as the result may seem, the hurried and misinformed legal analysis of Empire's proof of claim forms by its layman general manager, just as that of Westfalia's controller, must be imputed to Empire and its counsel. The Court will not permit Empire a second bite at the proverbial apple just because the first time that someone with legal acumen finally attended to the Bar Date Notice and proof of claim forms sent to Empire was after the Bar Date had passed.

### B. Excusable neglect: the *Pioneer* analysis

Fed.R.Bankr.P. 9006(b)(1) permits the enlargement of certain time periods, including the period for filing proofs of claim as set forth in Fed.R.Bankr.P. 3003(c)(3), on a finding that a movant's delay occurred as a result of excusable neglect.

Inquiries into excusable neglect are governed by the test fashioned in *Pioneer,* which requires courts to consider the following factors when determining whether excusable neglect exists:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489; *accord Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366 (2d Cir.2003). The United States District Court for the Northern District of New York stated in *O.W. Hubbell* that *Pioneer* "does not express a requirement that each factor be unmet in order to find no excusable neglect." *O.W. Hubbell,* 180 B.R. at 36. The burden of proving the existence of excusable neglect rests with the movant. *See In re XO Communications, Inc.,* 301 B.R. 782, 795 (Bankr. S.D.N.Y.2003).

While the *Pioneer* test may appear rather liberal at first blush, the Supreme Court clearly stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489; *see Westfalia,* 313 B.R. at 27, 29, 2003 WL 23712245 at *3, *5–6. The United States Court of Appeals for the Second Circuit has also declared that "the equities will rarely if ever favor a party who 'fails to follow the clear dictates of a court rule.'" *Silivanch,* 333 F.3d at 366 (quoting *Canfield v. Van Atta Buick/ GMC Truck, Inc.,* 127 F.3d 248, 250 (2d Cir.1997)).

#### 1. Empire

##### a. *Prejudicial impact on the Debtors*

Empire argues that the amount of $6 million for which the Debtors may be potentially liable in its proposed third-party action is minimal compared to the $61 million prayer for relief at issue in *Westfalia.* Additionally, Empire, along with the other Movants, argues that no prejudice will accrue to the Debtors if it is allowed to file a claim in this case because the Debtors' insurer will pay up to $25 million for the Debtors' legal fees and costs and judgment in the Warren case, if any. Moreover, should the Debtors' insurer pay more than the policy amount of $25 million, at most the insurer will have an unsecured claim against the Debtors for the overage. The Debtors respond that their insurance policy requires the payment of a one mil-

lion dollar deductible on worker's compensation claims.

The Court is aware that the insurance policy would be able to cover the full amount of a judgment against the Debtors in the third-party actions instituted by each of the Movants. However, the Debtors' defense requires the payment of a one million dollar deductible. This payment from the Debtors' estates would deplete the pool of funds available for distribution to unsecured creditors who timely filed proofs of claim in this case, as would also the allowance of the claim of the Debtors' insurer for funds paid beyond the policy amount. The Court finds this scenario prejudicial to the Debtors, especially given that a plan that does not account for this litigation has already been filed.

Furthermore, the Court finds as it did in *Westfalia* that allowing Empire, or any of the Movants, to file a late claim would open the door to other late claimants in the case, which would not only vitiate the Court's ruling in *Westfalia* but would prejudice the Debtors by requiring them to expend time and counsel fees objecting to these motions.

### b. Extent of delay and impact on proceedings

■ The Movants' delay in this case of 171 to 174 days is nearly three months longer than the delay in *Westfalia*, which the Court found to have a minimal impact on the proceedings because a plan and disclosure statement were not yet filed. At this point in the case, the allowance of the claims of Empire or any of the other Movants would hinder the progress the Debtors have made in crafting their plan and disclosure statement. The disbanding of the Official Committee of Unsecured Creditors by the U.S. Trustee in this case makes matters even worse because there is currently no known appointed representative to analyze the Debtors' treatment of the claims of Empire or the other Movants in the plan. Thus, the Court finds that Empire's and the other Movants' delay will have a negative impact on the proceedings.

### c. Reason for delay

■ The weakest aspect of Empire's argument is possibly the most critical to this analysis: its reasons for delay. In response to Empire's reliance on the specious argument that its claim accrued after the Bar Date, the Court incorporates by reference its discussion above of claim accrual and its rejection of Empire's argument that state law governs claim accrual in bankruptcy cases. Moreover, Empire repeatedly argued that they should be permitted to file a late claim because its attorneys were not aware of the Debtors' bankruptcy case. That too was an argument the Court found unpersuasive above. While Empire claims that it did not suffer a communication breakdown or lack proper office procedures as in *Westfalia* and *O.W. Hubbell*, the Court will reserve comment on the truth of those assertions and rest on its finding that Empire's failure to consult an attorney after receiving a legal notice and its choice to remain blind to basic principles of bankruptcy law were both acts of neglect that are very far from excusable. Accordingly, the Court finds Empire's reasons for delay wholly lacking.

### d. Good faith

Empire's good faith is not disputed by the Debtors, and, accordingly, the Court has no reason to assume otherwise.

In light of the unavailing reasons for Empire's delay, the negative impact its delay will have on the progress toward the confirmation of the Debtors' plan, and the prejudicial impact its delay will have on the Debtors, the Court finds that Empire's neglect was inexcusable and will therefore

deny its motion to extend the time in which to file a proof of claim in this case.

### 2. Lantry & CTB

The facts pertaining to the Court's analysis of prejudice, extent of delay, and good faith in connection with Empire's motion are not substantively different than those pertaining to the motions of Lantry and CTB. Accordingly, the Court will incorporate those findings into its analysis of Lantry's and CTB's motions to extend the time to file a proof of claim and will separately consider their reasons for delay below.

#### a. Lantry's reason for delay

Lantry does not cite any specific reason for delay apart from adopting Empire's arguments on the issue. Consequently, the Court finds that Lantry has not met his burden under *Pioneer*. Therefore, the Court will deny Lantry's motion to extend the time in which to file a proof of claim.

#### b. CTB's reason for delay

CTB submits as its reason for delay its reliance on the state law theory for claim accrual. Because the Court, in accord with substantial precedential authority, has rejected that argument, it must find that CTB's neglect was inexcusable. Therefore, the Court denies CTB's motion to extend the time in which to file a proof of claim.

Accordingly, the Court denies each of the Movants' motions to enlarge the period in which to file a proof of claim.

### III. Motions to lift the automatic stay

The Court is aware that the Movants also sought in their motions to lift the automatic stay pursuant to Code § 362(d)(1) in order to proceed nominally against Agway in the State Court action. *See Royal Ins. Co. of Am. v. McCrory Corp.*, No. 94 Civ. 5734(SS), 1996 WL 204482, at *1–2 (S.D.N.Y. April 25, 1996); *see also Green v. Welsh*, 956 F.2d 30, 33–35 (2d Cir.1992); *Bank of India v. Trendi Sportswear, Inc.*, No. 89 Civ. 5996(JSM), 2002 WL 84631, at *4–7 (S.D.N.Y. Jan.18, 2002), *aff'd*, 64 Fed.Appx. 827 (2d Cir.), *cert. denied sub nom. Indu Craft, Inc. v. Bank of India*, — U.S. ——, 124 S.Ct. 929, 157 L.Ed.2d 745 (2003). However, because the underlying hearings did not fully address the merits of the issue, the Court declines without prejudice to render an opinion on that aspect of the motions.

IT IS SO ORDERED.